IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | NO. 2:20-cv-01396-MMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | |
| Plaintiff Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DORCHESTER OWNERS' ASSOCIATION, | : | |
| | : | |
| Defendant. | : | CIVIL ACTION |

## PLAINTIFF UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES

### I.    INTRODUCTION

On March 12, 2020, the United States commenced this action alleging that the Dorchester Owners' Association ("DOA"), the condominium association for the Dorchester on Rittenhouse Square in Philadelphia, PA, engaged in a pattern or practice of discrimination and a denial of rights to a group of persons in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), by maintaining and enforcing policies that deny persons with disabilities who need assistance animals a reasonable accommodation to the DOA's "no pets" policy. The United States further alleged that the DOA denied Louise Hamburg, an owner at the Dorchester, a reasonable accommodation to keep her assistance animal at her home at the Dorchester, following the issuance of a charge of discrimination by the Secretary of Housing and Urban Development, and her election to proceed in federal court. Ms. Hamburg intervened in this matter pursuant to her rights under 42 U.S.C. § 3612(o)(2) and filed a complaint with similar

allegations. The Defendant has failed to comply with the basic requirements of the Rules of Civil Procedure concerning its responses to the United States' Interrogatories and Requests for Production as outlined below. As a result, the United States is unable to complete its discovery absent a court order compelling the Defendant.

### A. Procedural Background

#### 1. The United States' First Set of Interrogatories and First Request for Production of Documents and the Defendant's Responses

On September 2, 2020, the United States served its First Set of Interrogatories and First Request for Production of Documents to Defendant Dorchester Owners' Association (attached as Exhibits A and B, respectively). These requests and interrogatories sought information and documents concerning: (1) the organizational structure and governance of the DOA (Interrog. No. 2; Req. for Produc. No. 1); (2) DOA employees and management at The Dorchester (Interrog. No. 3); (3) the formulation, implementation, and enforcement of policies on reasonable accommodations, assistance animals, and pets at The Dorchester (Interrog. No. 4, 5, 12, 13; Req. for Produc. No. 2, 3, 4, 5, 12, 13); (4) requests for reasonable accommodations made to the DOA by Louise Hamburg and others known and unknown to the United States (Interrog. No. 1, 6, 7, 8, 9, 18; Req. for Produc. No. 6, 7, 8, 9, 15); (5) the DOA's training on the FHA and other requirements concerning reasonable accommodations (Interrog. No. 10, 11; Req. for Produc. No. 10, 11); (6) other complaints of discrimination against the DOA (Interrog. No. 14; Req. for Produc. No. 14); (7) the DOA's finances (Interrog. No. 15; Req. for Produc. No. 16), and (8) individuals who may have information concerning the allegations in this action (Interrog. No. 1, 16, 17). The United States anticipated that the Defendant's production of documents would consist of: emails between DOA Council members, employees, and residents; text messages, voicemail messages, and other cellphone or social media-based correspondence between DOA

Council members, employees, and residents; DOA Council meeting minutes and notes; other DOA policy documents and records; DOA resident files and other records of individuals who requested reasonable accommodations; and video and audio files from security cameras at The Dorchester. Since the DOA refused to enter into a stipulation concerning electronically stored information ("ESI"), the United states included instructions in its Requests for Production to produce ESI documents in native format. *See* Exhibit A.

On October 2, 2020, the Defendant provided its Objections and Responses to the United States' First Set of Interrogatories and First Request for Production of Documents (attached as Exhibits C and D, respectively); it did not, however, provide a production of documents at that time. The Defendant's Responses were wholly deficient and in violation of Federal Rules of Civil Procedure 26, 33, and 34 and Local Rule 26.1. Their primary deficiency appears to derive from the Defendant's mistaken belief that this case is limited to claims of discrimination against the DOA by a single individual: Ms. Hamburg. In fact, the United States' Complaint describes much broader Fair Housing Act violations that are the result of the DOA's assistance animal policies and its enforcement of those policies, starting in as early as 2009 and continuing to the present. *See* ECF 1, Compl. ¶¶ 10-23. The United States' Complaint further states that the DOA's conduct constitutes a "pattern or practice" and a "denial of rights to a group of persons" in violation of 42 U.S.C. § 3614(a), and, accordingly, the United States' Prayer for Relief includes in paragraph 5, "an award of monetary damages to … every [] person injured by the Defendant's discriminatory practices." *See* ECF 1, Compl. ¶¶ 53-56.

The United States has identified the following fifteen specific deficiencies in the Defendant's discovery Responses:

(1) **Providing general objections without specificity:**

In its Responses to both the United States' Interrogatories and Requests for Production, the Defendant incorporated eighteen General Objections, among which are included Objections to the United States' "Instructions" for Production and "Definitions." Without providing specifics, the DOA claimed that the United States' "Instructions" potentially "purport to impose obligations upon the DOA that go beyond, or are inconsistent with, or not required by, the Federal Rules of Civil Procedure"; similarly, the DOA provided no specifics concerning which of the United States' "Definitions" "offer improper, inaccurate, or incorrect descriptions of the terms they seek to define, or seek to require the DOA to provide or identify information or documents beyond the scope of what is required by the Federal Rules of Civil Procedure." *See* Ex. C, Def's Resp. to Pl.'s Interrog., General Obj. No. 10, 11; Ex. D, Def's Resp. to Pl.'s Req. for Produc., General Obj. No. 10, 11. In addition to citing its General Objections as a basis for its refusal to respond fully or at all to the United States' Requests, the Defendant repeats in its answers that the Requests are "vague, overly broad, unduly burdensome and seek[] information that is not relevant to the parties' claims or defenses in this case." *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 1-7, 10-18; Ex. D, Def's Resp. to Pl.'s Req. for Produc. No. 1-15.

(2) **Failing to respond on the basis that commonly used words such as "believe" were "vague, confusing, unintelligible, unnecessarily subjective, non-specific and incapable of interpretation":**

The DOA claimed that the United States' use of the words "supervisory duties," "participated," "participate" "concerning," "related to," "relating to," and "believe" prevents it from answering various interrogatories because such terms are "vague, confusing, unintelligible, unnecessarily subjective, non-specific and incapable of interpretation." *See* Ex. C, Def's Resp. to Pl.'s Interrog., General Obj. No. 4, Resp. to Interrog. No. 3, 5, 7, 9, 13, 16.

(3) **Providing Interrogatory answers that are vague and lack specificity:**

In several of its Responses, the DOA provided only a vague answer to the United States' discovery requests. For instance, instead of providing the names of specific individuals who were involved in the various DOA decision-making actions considered in these Interrogatories, the DOA's Responses referred to "the DOA Council." *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 5, 7.

(4) **Failing to identify responsive documents:**

The Defendant failed to specify which documents are responsive to discovery requests and failed to provide bates numbers to corresponding responsive documents.

(5) **Failing to state whether documents are being withheld:**

The DOA's Responses failed to state whether it is withholding or producing documents in response to the United States' Requests for Production.

(6) **Failing to provide a privilege log:**

To date, the DOA has failed to provide a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5)(A) for objections to Requests based on a claim of privilege, attorney-work product, or any other basis.

(7) **Refusing to disclose information concerning DOA's knowledge of reasonable accommodation policies, approvals, and denials:**

The DOA refused to substantially respond to the United States' Interrogatories 4, 5, 6, and 7 which called for the DOA to identify: its policies concerning reasonable accommodations, the individuals involved in the drafting and adoption of those policies, all individuals who have made reasonable accommodations to any of DOA's policies, and the individuals who participated in DOA's approval or denial of such requests. *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 4-7.

**(8) Refusing to provide information about the DOA's organization, management, and past and current employees:**

The DOA has refused to provide complete information regarding its current or former employees, agents, council members, or other persons who participated in the operation, management, or maintenance of The Dorchester as called for by Interrogatory No. 2. *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 2.

**(9) Failing to properly assert privilege and improperly withholding information about DOA Council minutes, policies, trainings, and other business records:**

The DOA invoked the attorney work-product doctrine and attorney-client privilege in many of its Responses. As a result, the DOA refused to provide complete information or documents relating to: the DOA's organizational structure and employees, the DOA individuals involved in the drafting and adoption of DOA's reasonable accommodation policies, Council meeting minutes related to the drafting and adoption of DOA's reasonable accommodation policies, reasonable accommodation requests made to the DOA, FHA trainings taken by DOA Council members and employees, other manuals or documents concerning the FHA that were provided to DOA employees or personnel, housing discrimination complaints made to or against the DOA, the DOA's financial information, and investigations or examinations conducted by the DOA related to this lawsuit as called for in Interrogatory No. 15 and Request for Production No. 16. The DOA did provide some DOA Council meeting minutes, but these were entirely or almost entirely redacted, partially on the basis of "attorney-client privilege," with the remaining redactions designated as "non pertinent."[1]

---

[1] The Defendant designated these documents, DOA-000679 - DOA-000715, as confidential and included redactions on 35 of the 36 total produced pages of DOA Council meeting minutes on the basis of "non pertinen[ce]." The United States requests that the Court order the Defendant to produce unredacted documents or review the unredacted documents in camera to determine whether redactions are appropriate.

(10) **Refusing to provide information about DOA employees and Dorchester residents who made reasonable accommodation requests by asserting privacy concerns:**

Among its General Objections, the DOA objected to Interrogatories and Requests for Production "to the extent they seek confidential or proprietary information, business information, competitively sensitive information, the financial information of the DOA, the personal information of any DOA owners, residents, employees or other individuals, or information otherwise protected, disclosure of which would be harmful to the DOA's business interests or would invade the DOA's privacy or the privacy rights of the DOA's management, employees, owners, residents, customers or other persons or entities to which the DOA owes any duty." *See* Ex. C, Def's Resp. to Pl.'s Interrog., General Obj. No. 13; Ex. D, Def's Resp. to Pl.'s Req. for Produc., General Obj. No. 13. Specifically, the DOA states "if any persons 'have made requests for reasonable accommodations to any of DOA's policies, whether it be caused by their own disability or on behalf of another person with a disability, including but not limited to, requests for assistance animals,' federal, state and other laws protect their identity from disclosure. . . ." *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 6.

(11) **Misreading Interrogatories as duplicative when they call for distinct information:**

The DOA incorrectly read Interrogatories No. 12 and 13 as duplicative of Interrogatories No. 4 and 5 when, in fact, these Interrogatories make important distinctions between DOA policies, past and present, regarding animals at The Dorchester (including assistance and service animals) and DOA policies, past and present, regarding reasonable accommodations for persons with disabilities in general at The Dorchester. *See* Ex. A; *see also,* Ex. C. Similarly, the Defendant misread Interrogatory No. 8, seeking a *why* answer, with Interrogatory No. 9, which seeks a *who* answer, and failed to respond accordingly. *See* Ex. A; *see also,* Ex. C.

(12)    **Failing to provide documents in its possession, custody, or control:**

The DOA asserted that because some documents responsive to the United States'

Requests had been previously provided to Counsel for the United States or may potentially be

obtained from other parties, it does not have to provide or identify related responsive documents

in its possession, custody, or control—namely, correspondence between DOA employees and

board members and aggrieved persons. *See* Ex. D, Def's Resp. to Pl.'s Req. for Produc. No. 9.

(13)  **Refusing to provide information about complaints of discrimination against
        the DOA:**

The DOA refused to identify and provide all complaints made against it relating to

housing discrimination, as called for in Interrogatory No. 14, claiming that "the information

sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by

improperly denying reasonable accommodations for assistance animals." *See* Ex. C. Def's Resp.

to Pl.'s Interrog. No. 14.

 (14) **Failing to produce electronically stored information created in the normal
        course of the Defendant's business:**

In its General Objections, the DOA stated that it "objects to any and all Requests for

Production to the extent that they seek, or purport to require, the identification, review, or access

of electronically stored information that the DOA does not own or control, was created by the

DOA's owners, residents, employees, is not reasonably accessible because of undue cost or

burden, or that is not proportional to the needs of this case." *See* Ex. C, Def's Resp. to Pl.'s

Interrog., General Obj. No. 14; Ex. D, Def's Resp. to Pl.'s Req. for Produc., General Obj. No.

14. The DOA provided no indication of which documents it believes to be outside of its

ownership or control. Further, DOA failed to produce any electronically stored information,

including emails and documents on DOA's own computers and email accounts, or video

surveillance footage. The United States contends that documents created by DOA Council members and employees in the normal course of business, including emails, text messages, voice messages, and video and audio files, must be produced. The DOA's suggestions that at least some of these documents would be too costly or burdensome to acquire do not specify which documents it is unable to produce in their original electronic format, or why it is unable to do so.

(15) **Refusing to provide its financial information:**

The DOA has refused to provide information regarding its financial status and net worth, including all assets and liabilities, as called for in Interrogatory No. 15. The DOA objects, among other reasons, on the basis of attorney-client privilege and attorney work-product and by claiming that such a request is overly burdensome and disproportional to the needs of the case and is premature.

### 2. Procedural History Following the Defendant's Discovery Responses

On October 28, 2020, the United States sent a letter outlining the deficiencies in the Defendant's Responses pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 26.1 (attached as Exhibit E). The Defendant responded on November 9, 2020, attached hereto as Exhibit F, wherein it stated that it would not produce documents relating to residents' reasonable accommodation requests or the DOA's knowledge of and decisions regarding those requests. The Defendant furthermore continued to contest the time period related to the United States' claims (from 2009 to the present) and the scope of the United States' discovery requests, stating that "this matter involves a single, infrequent resident of the Dorchester." *See* Ex. F.

On November 10, 2020, the Defendant mailed documents responsive to the United States' Request for Production of Documents, and on November 18, 2020, the Defendant mailed a Supplemental Production of Documents. The Defendant's Production and Supplemental

Production were largely limited to Louise Hamburg's tenant file, documents related to the HUD investigation and charge, copies of state statutes, and screenshots of news articles and other media-originated documents regarding assistance animals and service animals. Most notably, the Defendant failed to produce documents related to other residents' requests for reasonable accommodations at The Dorchester, and it has heavily redacted to the point of uselessness the few documents it did produce relating to internal communications, minutes, and decisions of the DOA regarding reasonable accommodation requests and policies. *See* Ex. D; *see also* note 1 and accompanying text. Finally, the Defendant failed to produce documents "as they are kept in the usual course of business" or "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," which is the bare minimum requirement for when "a request does not specify a form for producing electronically stored information," according to Federal Rule of Civil Procedure 34(b)(2)(E). But as the United States *did* specify a form for producing electronically stored information in Attachment A of its Requests for Production of Documents, the Defendant's production ought to have been in the requested format and to the specifications that the United States requested. *See* Ex. B. Instead, the Defendant ignored the instructions contained in the United States' Requests and in the Federal Rules and produced two unindexed, multi-hundred-page PDFs, a form which blurs distinctions between discrete documents and obscures important information about the documents' provenance and use (metadata), *e.g.*, whether a document that follows an email in the bulk PDF was attached to that email or comes from a different source entirely.

On December 11, 2020, Counsel for the United States requested time to meet and confer with Counsel for the Defendant. Defense Counsel was unable to meet until the following Thursday, December 17, 2020. On that day, Counsel for the Parties met and conferred

telephonically regarding deficiencies in the Defendant's November 10 and 18, 2020 productions, during which Defense Counsel represented that he had "no authority to resolve any of the issues." Defense counsel further informed counsel for the United States that he would get back to the United States early the following week (December 20, 2020), however, to date, the United States has received no follow up communication. Instead, the DOA filed its own motion to compel the United States. *See* ECF 28. Accordingly, the parties are unable to come to an agreement regarding the Defendant's responsibilities in producing all responsive documents in its possession, custody, or control and answering all interrogatories separately and fully.

## II.      MEMORANDUM OF LEGAL AUTHORITY

The Court should compel the DOA to comply with the applicable discovery rules and produce discovery responsive to the United States' First Set of Interrogatories and First Set of Requests for Production of Documents. A party may move to compel full and complete responses to interrogatories and documents requests pursuant to Federal Rule of Civil Procedure 37. *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B), (a)(4). "The party resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." *Focht v. Nationstar Mortgage, LLC*, No. 3:18-cv-151, 2019 WL 3081625, *1 (W.D. Pa. July 15, 2019) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982). *See also Yoder v. Frontier Nursing University, Inc.*, Case No. 3:17-cv-18, 2018 WL 1524395, at *2-3 (W.D. Pa. Mar. 28, 2018) (holding that sanctions were appropriate in addition to granting the moving party's motion to compel discovery because the nonmoving party "failed to engage in good faith efforts. . . to resolve this dispute and has repeatedly delayed. . . ."). Federal Rule of Civil Procedure 26(b)(1) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The United States' requests are relevant and proportional to the needs of the case, particularly the United States' pattern or practice claim, the claims it brings on behalf of Ms. Hamburg and other aggrieved persons, and its ability to identify additional aggrieved persons harmed by the Defendant's enforcement of discriminatory reasonable accommodation policies. The United States' requests, which seek information and documents from January 1, 2009 to the present, are reasonable, carefully tailored to lead to the discovery of relevant evidence, are proportional to the needs of the case, and do not inflict an undue burden or expense on the Defendant. Fed. R. Civ. P. 26(b)(1).

**A. Discovery of Assistance Animal Policies, Reasonable Accommodation Requests, DOA Decisions, and DOA's Enforcement of Its Policies from January 1, 2009 to the Present Is Relevant to the United States' Claims Against the Defendant.**

The United States' Complaint alleges that the Defendant engaged in a pattern or practice of discrimination, in violation of 42 U.S.C. § 3614(a). To establish a pattern or practice of discrimination, the United States must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts," but that the discrimination is "the standard operating procedure—the regular rather than the unusual practice." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977). There is no minimum number of incidents required to establish the existence of a pattern or practice of discrimination. *See United States v. Peachtree Tenth Corp.*, 437 F.2d 221, 227 (5th Cir. 1971) (stating that "no mathematical formula is workable, nor was any intended"). Rather, "[p]roof that a party adopted a discriminatory

policy satisfies the Fair Housing Act's pattern or practice requirement." *United States v. Garden Homes Mgmt. Corp.*, 156 F. Supp. 2d 413, 423 (D.N.J. 2001); *see also United States v. City of Parma*, 494 F. Supp. 1049, 1095 (N.D. Ohio 1980) ("The existence of a discriminatory policy, statute, or ordinance is itself a discriminatory pattern or practice.").

The United States alleges in its Complaint that the Defendant has had a "no pets" policy in place since at least 1980, a reasonable accommodation for an assistance animal policy in place since at least 2009, and that both policies were in existence when Ms. Hamburg requested a reasonable accommodation in December 2017. *See* ECF 1, Compl. ¶¶ 9-10, 26. The Defendant has revised its assistance animal policy at least three times, specifically in 2018, 2019, and 2020, encompassing the time period when at least one other reasonable accommodation request was submitted to the Dorchester. *See* Compl. ¶¶ 17-22, 46. As a result, the United States is entitled to discovery regarding all of the Defendant's assistance animal policies, any other reasonable accommodation policies, and its "no pets" policies, beginning in at least 2009, and particularly to information and documents about prospective or actual residents other than Ms. Hamburg who submitted "requests for reasonable accommodations for a person with a disability, including but not limited to requests for assistance animals." *See* Ex. B, Req. for Produc. No. 2-7; *see also* Ex. A, Interrog. No. 4, 5, 12, and 13. This discovery will demonstrate how the Defendant's assistance animal policies operated over the time period relevant to the Complaint, including whether requests for assistance animals were made by other residents and how those requests were treated. Access to this information is vital to the United States' ability to gather evidence regarding its pattern or practice claim.

Discovery of the Defendant's resident records is also relevant to the claims the United States brings on behalf of Ms. Hamburg and other aggrieved persons and to the United States'

ability to identify additional aggrieved persons who were harmed by the Defendant's discriminatory practices. The United States may seek discovery to determine whether other residents have been injured by the same "pattern or practice" of discrimination that injured Ms. Hamburg. *See* 42 U.S.C. § 3614(d)(1)(B) (authorizing the United States to seek monetary damages on behalf of aggrieved persons in a pattern or practice lawsuit); *United States v. Balistrieri*, 981 F.2d 916, 935 (7th Cir. 1992) ("[N]othing in the [Fair Housing] Act demands, or even implies, that damages are proper only for people the government knows about at the time it files its complaint."). The United States seeks resident information in order to locate witnesses and develop other evidence in support of Ms. Hamburg's claims of discrimination, such as facts regarding other reasonable accommodation requests or the Defendant's preferential enforcement of rules regarding pets against residents. Further, resident information will assist the United States in identifying additional individuals who were subject to the Defendant's discriminatory policies. Thus, resident files—including "all documents related to the presence of pets, service animals, or assistance animals at the Dorchester" and "all documents concerning the enforcement of DOA's 'no pets' policy," Ex. B, Req. for Produc. No. 12 and 13—will enable the United States to evaluate the extent and nature of the Defendant's discriminatory actions against Ms. Hamburg and other similarly-situated residents during the entire period relevant to the United States' Complaint. The Defendant's claims that "federal, state and other laws protect [the identity of residents and employees] from disclosure," are unjustified, as such information is protected if marked "confidential" under the Protective Order entered in this case. *See* ECF 21.

Furthermore, the Defendant objects to the temporal scope of the United States' Requests, from 2009 to the present, and limited its Responses to "the time relevant to Plaintiff's Complaint: from Louise Hamburg's December 25, 2017 email to present." *See* Ex. D, Def's Resp. to Pl.'s

Req. for Produc., General Obj. No. 17. Again, the United States is entitled to identify other aggrieved persons whose rights were violated in the DOA's enforcement of its assistance animal policies. The Defendant's claims that the United States' Requests are overly broad or irrelevant to the parties' claims and defenses simply do not take into account the broader scope of the facts alleged in the United States' Complaint.

The information sought by the United States' Interrogatories and Requests for Documents concerning the DOA's "no pets" policy, reasonable accommodation policies, assistance animal policies, Fair Housing Act trainings, records of reasonable accommodation requests, and records of complaints concerning housing discrimination are necessary for the United States to determine the extent of the DOA's pattern or practice of Fair Housing Act violations and for the identification of other aggrieved persons. Therefore, the DOA should be compelled to produce all such relevant information.

**B. Defendant's General Objections Are Improper.**

The Defendant asserts a list of eighteen General Objections in its Responses to both the United States' Interrogatories and Requests for Production of Documents, among which are objections to the United States' "Instructions" for Production and "Definitions," and refers to these objections continuously in its Responses as a basis for not responding to various interrogatories and requests in addition to claiming that nearly all Requests are "vague, overly broad, unduly burdensome and seek[] information that is not relevant to the parties' claims or defenses in this case." *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 1-7, 10-18; Ex. D, Def's Resp. to Pl.'s Req. for Produc. No. 1-15. "General" objections are judicially disfavored, and "incorporating general objections into each response contravenes Rule 34(b)(2)(B)'s specificity requirement." *Theia Technologies LLC v. Theia Group, Inc.*, Civil Action No. 20-97, 2020 WL

6450468, *3 (E.D. Pa. Nov. 3, 2020). To the extent that a specific request is objected to, the specific objections should be set forth in response to the request. "[R]elevancy, and to a lesser extent burdensomeness, constitute the principal inquiry in ruling upon objections to interrogatories." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980). Accordingly, "[t]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery 'must show specifically how. . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (quoting *Roesberg*, 85 F.R.D. at 296-297); *see also Williams v. Sweet Home Healthcare, LLC*, Civil Action No. 16-2353, 2017 WL 2779189, *3 (E.D. Pa. June 27, 2017) ("Plaintiffs flout their burden of persuasions with woefully insufficient responses such as 'Objection. This Request is overbroad and unduly burdensome.'"); *Porter v. Nationscredit Consumer Discount Co.*, No. Civ.A. 03–3768, 2004 WL 1753255, *1 (E.D. Pa. July 8, 2004) ("As case law and common sense dictate, [the objecting party] must provide reasoning and specificity with each objection."); *Superior Coal Co. v. Ruhrkohle, A. G.*, 83 F.R.D. 414, 422 (E.D. Pa. 1979). General objections are, by their nature, at odds with the purpose of discovery. DOA's general objections as outlined above are not sufficiently specific to any individual request or interrogatory and should therefore be overruled.

### C. Defendant's Objections that Interrogatories Were Vague and Ambiguous Are Improper.

The Defendant objected to Interrogatories No. 3, 5, 7, 9, 13, and 16, stating that certain common words and phrases in the United States' Requests—namely, "supervisory duties," "participated," "participate," "concerning," "related to," and "relating to"—are "vague, confusing, unintelligible, unnecessarily subjective, non-specific and incapable of interpretation."

*See* Ex. C, Def's Resp. to Interrog., General Obj. No. 4, Resp. to Interrog. No. 3, 5, 7, 9, 13, 16.

To suggest that these common parlance terms are so unfamiliar to the DOA to result in the

Defendant's incapacity to interpret their plain meaning stretches credulity to an absurd degree.

Similarly, in the DOA's objection to the United States' Interrogatory No. 1, which calls for it to

"[i]dentify each person whom [the DOA] believe[s] has information or knowledge of facts or

information concerning the allegations in the United States' Complaint in this action . . . ." the

DOA objects to the use of the word "believe," and comments that "[u]nlike people, an

Association does not have the faculty to 'believe,' or the facility to formulate beliefs as

suggested by this Interrogatory." Ex. A, Pl.'s Interrog. No. 1; Ex. C, Def's Resp. to Pl.'s

Interrog. No. 1. Again, the statement that the DOA is so unfamiliar with the idea of a collective

belief held by an association of individuals—for example, as commonly referenced in mission

statements, core values and beliefs, and in correspondence directed to or from an organization in

which a single voice speaks for the collective in regards to decision-making and knowledge—is

not possibly believable by any person—individual or otherwise.

In fact, parties have an "obligation to construe . . . discovery requests in a reasonable

manner." *Cache LaPoudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618 (D. Colo.

2007); *see also Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 298 (E.D. Pa. 1980) ("Since

plaintiffs have not assigned a particular meaning to these phrases, the ordinary, everyday usage

and meaning must have been intended."); *King-Hardy v. Bloomfield Board of Education*, No.

Civ.3:01CV979 (PCD), 2002 WL 32506294, at *5 (D. Conn. 2002) (holding that the responding

party must give discovery requests a reasonable construction, rather than strain to find

ambiguity); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) ("A party responding to

discovery requests should exercise reason and common sense to attribute ordinary definitions to

terms and phrases utilized . . . .") (internal quotations omitted). The terms to which the DOA objected are clear and unambiguous. DOA failed to give a reasonable construction to these ordinary words and phrases, and therefore its objections should be overruled.

**D. The Defendant's Responses and Form of Production Are Inadequate, Incomplete, and Violate the Federal Rules of Civil Procedure.**

The Defendant's discovery is deficient in both scope and format. Specifically, the Defendant: provides vague responses to questions about specific individuals, dates, and events; fails to identify responsive documents; fails to respond to interrogatories on the mistaken basis that they are duplicative of other interrogatories; fails to state whether it is withholding or producing documents; fails to provide a privilege log; redacts portions of produced documents on the basis of the information being "non pertinent"; and has not provided documents "as they are kept in the usual course of business" or "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms" in violation of Federal Rules of Civil Procedure 26, 33, and 34. Fed. R. Civ. P. 34(b)(2)(e)(i)-(ii).

The Defendant's vague and nonspecific answers to the United States' discovery requests are inappropriate and inadequate for the purposes of discovery. The goal of discovery is to narrow the issues and eliminate surprises. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (stating that "civil trials in the federal courts no longer need be carried on in the dark"); *Hernandez v. George*, 793 F.2d 264, 267 (10th Cir. 1986) (noting that the goal of discovery is to eliminate surprises). Courts within the Third Circuit have repeatedly held that interrogatory responses may not merely generally reference previous discovery, but must "be complete in and of themselves." *Roman v. City of Reading*, 121 Fed. Appx. 955, 959 (3d Cir. 2005) (citing 4 J. Moore, J. Lucas & G. Grotheer, Jr., Moore's Federal Practice (2d ed. 1989) ¶ 33.25[1]); *see also HSI, Inc. v. 48 States Transport, LLC*, Civil No. 4:19-CV-352, 2019 WL 6492529, *2 (M.D. Pa.

Dec. 3, 2019); *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992); *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 787 (3d Cir. 1974) (holding that plaintiff's evasive and nonresponsive interrogatory responses, among them, "This question does not seem to be any business of the defendant's," were "highly inappropriate" and inadequate). In regards to providing specific names and addresses of individuals who are potential witnesses, "the interrogating party is entitled to the names and addresses of the persons known to the interrogated party as having knowledge of the subject matter of the interrogatory." *Lunn v. United Aircraft Corp.*, 25 F.R.D. 186, 188 (D. Del. 1960). Accordingly, the Defendant's response that "the DOA Council" approved and adopted the Dorchester's assistance animal policies is insufficient, especially as the Defendant has not provided full and complete information about who the Council members were prior to December 2017. *See* Ex. C, Def's Resp. to Pl.'s Interrog. No. 5.

The Defendant fails to respond to Interrogatories No. 12 and 13 (which concern the DOA's policies regarding animals at The Dorchester) because it misreads them as duplicative of Interrogatories No. 4 and 5 (which concern the DOA's reasonable accommodations policies), and similarly misreads Interrogatory No. 8, seeking a *why* answer, with Interrogatory No. 9, which seeks a *who* answer, and fails to respond accordingly. *See* Ex. A; *see also,* Ex. C. The Defendant's reincorporation of its responses to Interrogatories No. 4, 5, and 8 to Interrogatories No. 12, 13, and 9, respectively, is therefore inadequate and inappropriate.

The Defendant also fails to specify which documents are responsive to discovery requests. Federal Rule of Civil Procedure 33(d)(1) allows parties to respond to interrogatories by producing business records, but only if the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as

readily as the responding party could." Similarly, in responding to production requests, a party is required to either produce the documents as kept in the usual course of business or must organize and label them to correspond to the requests. Fed. R. Civ. P. 34(b)(2)(E)(i). The Defendant references, generally, documents in the Plaintiff's possession without further identification. Thus, the Defendant's Responses do not enable the United States to identify which documents are responsive to the discovery requests.

The DOA's Responses also fail to state whether it is withholding or producing documents in response to the United States' Requests for Production, in violation of Federal Rule of Civil Procedure 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). Federal Rule of Civil Procedure 26 requires that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must expressly make the claim[] and describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). Further, under the Notes of the Advisory Committee to the 1993 Amendment to Rule 26, "A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1933 amendment. Both the Defendant's failure to state whether it is withholding or producing documents and its failure to provide a privilege log to "expressly make the claim[]" and "describe the nature of the documents" it is withholding due to privilege

or protection are in violation of these Rules and obstruct the goals of discovery. Fed. R. Civ. P. 26(b)(5)(A).

Additionally, the Defendant unilaterally redacted portions of its produced DOA Council meeting minutes on the basis of the information being "non pertinent." *See supra* note 1 and accompanying text. Courts have generally rejected a party's attempts to redact portions of documents as unsupported by Rule 34. *See Rodriguez-Ocasio v. Midland Credit Management, Inc.*, Civil Action No. 17-3630 (ES) (MAH), 2019 WL 3821769, at *2 (D.N.J. July 23, 2019) ("absent special circumstances, courts view entire documents as either relevant or irrelevant; they do not weigh the relevance of particular provisions"); *Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *1–2 (W.D. Pa. Sept. 30, 2008) (affirming a special master's reasoning "that redaction of documents is disfavored and is appropriate only in limited circumstances" . . . and finding that there is no express or implied support in the Federal Rules of Civil Procedure by "which a party would scrub responsive documents of non-responsive information."); *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) ("Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."). Accordingly, the Defendant should be compelled to produce responsive documents without redactions on the basis of "non pertinence."

Finally, the Defendant failed to produce documents "as they are kept in the usual course of business" or "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," which is the lowest threshold for the production of electronically stored

information, according to Federal Rule of Civil Procedure 34(b)(2)(E)(i)-(ii). The court in *Romero v. Allstate Ins. Co.*, considered this issue closely when it ruled on whether a party's request that electronic discovery be produced in native files with all associated metadata was overly burdensome to the opposing party. 271 F.R.D. 96, 105-109 (E.D. Pa. 2010) (Buckwalter, Senior District Judge). Relying on The Sedona Guidelines, a leading authority on electronic document retrieval and production, used by many courts, the *Romero* court acknowledged the ability of metadata to "provide Plaintiffs with crucial information and permit them to engage in a more effective and meaningful search and use of Defendants' extensive documentation" in finding that the Plaintiffs were entitled to have documents produced in native format with their associated metadata. *Id.* at 108; *see also Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350 (S.D.N.Y. 2008) ("Under Federal Rule of Civil Procedure 34, a party may specify the form of production of documents as including metadata and the responding party then must either produce it in the form specified or object."); *Pastin v. Allstate Ins. Co.*, No. 2:17cv1503, 2018 WL 10229727, *1-2 (W.D. Pa. Sept. 18, 2018); *Susquehanna Commercial Finance, Inc. v. Vascular Resources, Inc.*, No. 1:09–CV–2012, 2010 WL 4973317, *13 (M.D. Pa. Dec. 1, 2010); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) (noting that the removal of metadata "usually requires an affirmative alteration of that document."); The Sedona Conference Working Group on Best Practices for Electronic Document Retention & Production, THE SEDONA GUIDELINES: BEST PRACTICE GUIDELINES & COMMENTARY FOR MANAGING INFORMATION & RECORDS IN THE ELECTRONIC AGE, (Nov. 2007),

https://thesedonaconference.org/sites/default/files/publications/Guidelines%20for%20Managing%20Information%20%26%20Records%20in%20the%20Electronic%20Age_2007.pdf.

The format used by the Defendant—two bulk PDFs with unitized documents—prevents the United States from gathering information about the Defendant's electronically stored information that it is entitled to, such as creation dates, authors, and other metadata. This requested metadata is crucial for the United States to be able to search, understand, and use the documents, particularly: (1) to understand what attachments were attached to what emails; (2) to verify the authenticity of documents; (3) to understand when documents were actually created or modified by the Defendant (or its agents); (4) to understand what custodians possessed what documents, thereby allowing the United States to use those documents during particular depositions; (5) to sort, review, and search electronic documents by metadata fields; and (6) to understand the creation and storage context of the documents themselves. Therefore, DOA should be compelled to produce all electronically stored information within its possession, custody, or control in the format requested by the United States.

**E. Defendant's Objections to Requests for Relevant Information Are Improper.**

The Defendant objects to many of the United States' Requests on the basis that the information requested is irrelevant or would invoke privacy concerns. Specifically, the Defendant objects to Interrogatories No. 1, 6, 10, and 14, which request information about the identities of: individuals with information or knowledge about the allegations in the United States' Complaint, individuals who made reasonable accommodation requests at the Dorchester, guidance or policy documents regarding compliance with the FHA or equivalent local laws, and complaints made against the DOA regarding housing discrimination. *See* Ex. A, Pl.'s Interrog., No. 1, 6, 10, 14; Ex. C, Def's Resp. to Pl.'s Interrog., Resp. to Interrog. 1, 6, 10, 14. The Defendant objects to all these Interrogatories on the basis that the Defendant's knowledge at a specific time "has no bearing on whether the DOA unlawfully denied Ms. Hamburg a reasonable

accommodation for an assistance animal." *Id.* The Defendant improperly asserts this objection, as what the DOA knew or did not know at any particular point is directly relevant to whether it unlawfully denied reasonable accommodations, and knowledge of a reasonable accommodation request and of a requester's disability is a necessary component that the United States must determine in its prosecution of Fair Housing Act violations and in its evaluation of the Defendant's actions. "For a housing provider's action to be considered a 'refusal' under the Fair Housing Act, the provider must have had a prior opportunity to accommodate." *Revock v. Cowpet Bay West Condominium Association*, 853 F.3d 96, 111 (3d Cir. 2017) (internal quotations omitted). Moreover, as the DOA's Assistance Animal Policies themselves violate the Fair Housing Act, how these policies were enforced is critical to a fundamental element of the United States' pattern or practice and denial of rights claims. *Id.*

The Defendant objects to Interrogatory No. 6, in which it was asked to "[i]dentify all persons who have made requests for reasonable accommodations to any of DOA's policies, whether because of their own disability or on behalf of another person with a disability, including but not limited to requests for assistance animals, since 2009," on the grounds that responding would violate state and federal privacy protections. Ex. A, Pl's Interrog. No. 6; *see also* Ex. C, Def's Resp. to Interrog. No. 6. As noted above, this information may be protected under the Protective Order, ECF 21, and the Defendant has not proffered any explanation as to why a confidentiality designation would not serve to protect the privacy of any employee or resident. Therefore, the DOA should be compelled to respond fully and produce all responsive documents.

Finally, the Defendant claims that financial information need not be provided, asserting, in addition to a variety of privileges, that the information sought is "not relevant to the parties'

claims or defenses in this case." *See* Ex. C. Def's Resp. to Pl.'s Interrog. No. 15. Financial

information is not privileged. *See* Fed. R. Civ. P. 26(b)(1). The Court in this matter has already

ruled that punitive damages may be sought for aggrieved persons. *See* ECF 23. The United States

is entitled to this information, and the information is relevant to the penalties and damages that

may be assessed in this case. *See Long v. H.D.J. Co., Inc.*, No. Civ.A.03–3054, 2004 WL

1427144 at *1 (E.D. Pa. June 14, 2004) ("Defendant's financial information is clearly

discoverable in light of Plaintiff's punitive damages claim."). As the financial information sought

is relevant on its face, the Defendant has the burden to establish that the requested discovery

does not come within the scope of relevance as defined under Rule 26. The DOA cannot make

such a showing, and therefore should be compelled to provide its financial information.

**F. The Defendant's Assertion of Attorney-Client Privilege and Attorney Work Product Doctrine Should Not Succeed in Preventing Discovery of DOA Council Meeting Minutes, Correspondence, and Other Records from Disclosure.**

**1. The Record Does Not Demonstrate that Attorney-Client Communications Exist in Documents Requested by the United States.**

"[The attorney-client] privilege protects from disclosure confidential communications

made between attorneys and clients for the purpose of obtaining or providing legal assistance to

the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007); *see also In re*

*Berks Behavioral Health LLC*, 500 B.R. 711, 718 (Bankr. E.D. Pa. 2013). The attorney-client

privilege allows a party to withhold a communication from disclosure only when it meets all of

the following elements: "it must be (1) a communication (2) made between privileged persons

(3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."

*In re Teleglobe Communications Corp.*, 493 F.3d at 359 (internal quotations omitted). The party

asserting the privilege bears the burden of establishing the requisite elements. *In re Grand Jury*,

705 F.3d 133, 160 (3d Cir. 2012); *see also TC Technology LLC v. Sprint Corporation*, No. 16-

cv-153-RGA, 2018 WL 6584122 at *2 (D. Del. Dec. 13, 2018). Additionally, the Third Circuit

has held that, "[t]he privilege does not apply merely because a statement was uttered by or to an

attorney (or an attorney's agent). Nor does it attach simply because a statement conveys advice

that is legal in nature." *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 (D.N.J. 2001)

(citing *Westinghouse Elec. Corp.*, 951 F.2d 1414, 1423–24 (3d Cir. 1991)). Rather, "the

privilege extends to '*only* those disclosures—necessary to obtain informed legal advice—which

might not have been made absent the privilege.'" *Id.*; *see also IQVIA, Inc. v. Veeva Systems,*

*Inc.*, No. 2:17-CV-00177-CCC-MF, 2019 WL 2083305, at *4 (D.N.J. May 13, 2019).

It is unclear if the DOA is using the mere presence of an attorney or attorneys who serve

as Council members at Council meetings and trainings as the basis for its invocation of these

privileges. An attorney who is acting in his capacity as a Council member rather than as an

attorney giving legal advice is not subject to the attorney client privilege, and "[a]n attorney's

'mere attendance' at a meeting cannot protect the notes produced from that meeting where they

would 'otherwise be discoverable . . . but for their creation in the presence of a lawyer.'"

*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 479 (E.D. Pa. 2005) (quoting

*Martin Marietta Corp. v. Fuller Co., Misc.*, No. 86–0151, 1986 WL 13308, at *2 (E.D. Pa. Nov.

21, 1986)). "It is well-settled that 'the mere fact that an attorney attended a meeting does not

render everything said or done at that meeting privileged.'" *Cottillion v. United Refining Co.*,

279 F.R.D. 290, 311 (W.D. Pa. 2011) (quoting *Pownell v. Credo Petroleum Corp.*, No. 09–cv–

01540–WYD–KLM, 2011 WL 1045418, *3 (D. Colo. 2011)); *Brinckerhoff v. Town of*

*Paradise*, No. 10-cv-0023, 2011 WL 2926936, at *3 (E.D. Cal. July 15, 2011) ("The fact that

confidential communications within the privilege may have been made at the board meetings

does not cloak the entire proceeding in secrecy."). Instead, the communication would be

privileged only if "the communication [was] made in confidence for the purpose of obtaining legal advice from the lawyer." *IQVIA, Inc.,* 2019 WL 2083305, at *4 (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)); *see also Cottillion,* 279 F.R.D. at 311.

But even for those meetings when the Defendant's actual attorney(s) are present, this privilege would not insulate the entire meeting. "Privilege is restricted to those instances where employees secure legal, not business, advice or services, or where in-house counsel provides legal advice or legal services to corporate personnel." *SmithKline Beecham Corp.*, 232 F.R.D. at 479. Privilege applies where a "corporation . . . clearly demonstrates that the communication in question was made for the express purpose of securing legal not business advice." *Kramer v. Raymond Corp.*, Civ. No. 90–5026, 1992 WL 122856, at *1 (E.D. Pa. May 26, 1992); *see also In re Ford Motor Co.*, 110 F.3d 954, 956 (3d Cir.1997) ("[M]inutes of the meeting reflect that the recorded communications were for the purpose of obtaining legal advice and hence are protected by the attorney-client privilege."). The privilege does not apply to "discussions among [council] members or the opinions, impressions, and conclusion of [council] members based upon events occurring during the closed session." *Hinsdale v. City of Liberal, Kan.*, 961 F.Supp. 1490, 1494 (D. Kan. 1997); *see also Cottillion,* 279 F.R.D. at 311. Discussions held by the Council at meetings open to DOA members and the public are not privileged, and, while the attorney-client privilege might apply in a limited way to some of the discussions held in the DOA Council's closed sessions, it does not provide a blanket privilege to prevent the DOA from producing these minutes or justify the DOA's production of wholly redacted meeting minutes. To the extent that certain minutes contain legal advice or other communications that relate to the acquisition or rendition of legal advice, the Defendant should simply redact this information and provide a privilege log with sufficient information to determine whether a privilege appropriately protects

such information. However, the United States should have access to all remaining information in the relevant Council meeting minutes, including the mental impressions, opinions, and conclusions of Council members. *See Dombrowski v. Bell Atlantic Corp.*, 128 F. Supp. 2d 216, 218 (E.D. Pa. 2000) ("[T]he attorney-client privilege does not protect a party from disclosing underlying facts. Rather, it simply protects communications between a party and the party's attorney.") (internal quotations omitted).

## 2. The Record Does Not Demonstrate that the Attorney Work-Product Doctrine Protects Documents Requested by the United States.

For attorney work product to apply, the documents must: "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotations omitted); *see also Pennsylvania Dept. of Public Welfare v. U.S.*, No. CIVA 05-1285, 2006 WL 3792628, at *22-23 (W.D. Pa. Dec. 21, 2006) ("The attorney work product privilege may only be invoked to exempt those documents prepared in anticipation of litigation, and not every written document generated by an attorney.") (internal quotations omitted). The work-product doctrine "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)). The Defendant has not set forth how DOA Council meeting minutes, policies, and training materials were "prepared in anticipation of litigation," and it bears the burden of establishing that these documents are privileged. *See Pennsylvania Dept. of Public Welfare*, 2006 WL 3792628, at *23. It would defy credulity that every meeting in which a request for a reasonable accommodation was discussed was done in anticipation of litigation, let alone be the work

product of an attorney acting to prepare for such litigation. Therefore, the DOA should be compelled to produce all relevant meeting minutes.

**G. The United States' Requests Do Not Impose an Undue Burden or Expense on the Defendant.**

The discovery sought by the United States is not overly burdensome or expensive. The Defendant cannot avoid producing relevant discovery by arguing simply that review of documents will be time-consuming or require additional effort or expense. As one court explained, "Discovery always entails some burden or expense." *Clinton v. Cal. Dept. of Corr.*, No. 05-cv-1600, 2008 WL 5068586, at *1 (E.D. Cal. Nov. 25, 2008). *See also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (allegations of injury must be substantiated by "specific examples or articulated reasoning"); *Joseph v. Harris Corp.*, 677 F.2d 985, 991 (3rd Cir. 1980); *Hines v. City of Philadelphia*, 1994 WL 376914 at *2 (E.D. Pa. 1994) ("particularized showing of 'significant' harm" required); *Ross v. Abercrombie & Fitch Co.*, Nos. 2:05–cv–0819, 2:05–cv–0848, 2:05–cv–0879, 2:05–cv–0893, 2:05–cv–0913, 2:05–cv–0959, 2010 WL 1957802, at *3 (S.D. Ohio May 14, 2010) ("The party claiming that discovery is burdensome does have an obligation to make that claim with . . . specific, articulable facts and not merely speculative or conclusory statements") (internal citations omitted). As the Defendant has made no efforts to allege specific examples of undue burden or significant harm caused by the United States' Requests, a blanket refusal to not provide documents created in the normal course of the DOA's business is inappropriate. Accordingly, the DOA is required to produce the electronically stored information requested by the United States or to articulate clearly and specifically why the DOA is unable to do so. The importance of this discovery to the United States' case far outweighs the burden and expense to the Defendant in producing it, particularly as this burden and expense have yet to be quantified.

### III. CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court grant our Motion to Compel Discovery and order that:

A. the Defendant's General Objections be overruled;

B. the Defendant's objections to the scope and relevance of the United States' discovery requests be overruled;

C. the Defendant's objections on the basis of vague and ambiguous terms be overruled;

D. the Defendant's objections on the basis of attorney-client privilege and attorney work product doctrine be overruled;

E. the Defendant shall produce unredacted DOA Council meeting minutes, correspondence, and other records;

F. the Defendant shall identify all responsive documents, shall produce a privilege log, and shall state whether it is withholding or producing documents;

G. the Defendant shall answer the United States' interrogatories with specific answers;

H. the Defendant shall fully respond and produce documents responsive to the United States' discovery requests; and

I. the Defendant's objection on the basis of undue burden or expense are overruled.

Should the Court require additional review of the documents produced by the Defendant, the United States requests that the Court review unredacted documents in camera.

Respectfully submitted on this 29 day of December, 2020.

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief
Housing and Civil Enforcement Section


*/s/ Mazen M. Basrawi*
ANDREA K. STEINACKER
Special Litigation Counsel
MAZEN M. BASRAWI
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St., NE/ 6.1134
Washington, DC 20530
Telephone: (202) 305-1876
Fax: (202) 514-1116
mazen.basrawi@usdoj.gov