IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | NO. 2:20-cv-01396-MMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | |
| Plaintiff Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DORCHESTER OWNERS' ASSOCIATION, | : | |
| | : | |
| Defendant. | : | CIVIL ACTION |

## <u>EXHIBIT LIST</u>

A.    The United States' First Set of Interrogatories Directed to Defendant, dated September 2, 2020.

B.    The United States' First Set of Requests for Production of Documents Directed to Defendant, dated September 2, 2020.

C.    The Defendant's Objections and Responses to the United States' First Set of Interrogatories Directed to Defendant, dated October 2, 2020.

D.    The Defendant's Objections and Responses to the United States' First Set of Requests for Production of Documents Directed to Defendant, dated October 2, 2020.

E.    The United States' Response to the Defendant's Responses, pursuant to Rule 37, dated October 28, 2020.

F.     The Defendant's Response to the United States' Rule 37 letter, dated November 9, 2020.

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | NO. 2:20-cv-01396-MMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | |
| Plaintiff Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DORCHESTER OWNERS' ASSOCIATION, | : | |
| | : | |
| | : | |
| Defendant. | : | CIVIL ACTION |

## PLAINTIFF UNITED STATES' FIRST SET OF INTERROGATORIES TO DEFENDANT DORCHESTER OWNERS' ASSOCIATION

In accordance with Federal Rule of Civil Procedure 33, the United States requests that

Defendant Dorchester Owners' Association ("DOA") answer the following interrogatories,

separately and fully in writing and under oath, within 30 days after service. The DOA should

serve its response by email to Mazen Basrawi at mazen.basrawi@usdoj.gov.

## INSTRUCTIONS AND DEFINITIONS

1.      If the DOA attempts to answer an Interrogatory by producing a business

record in accordance with Fed. R. Civ. P. 33(d), please (1) attach copies of the business

records or electronically stored information ("ESI") to the DOA's answer and (2) include a

specific statement in response to the Interrogatory that addresses all of the elements of Fed.

R. Civ. P. 33(d) and specifically identifies the business records or ESI.

2. If any information is withheld under a claim of privilege, state the privilege that the DOA claim applies and provide sufficient information to allow a reasonable assessment of the assertion of privilege.

3. Where an individual interrogatory requests an answer which involves a response that includes an answer in more than one part, according to different dates or time periods, please set out the answer chronologically.

4. If any parts of the Interrogatories below cannot be answered in full, please answer to the extent possible, specify the reason for your inability to answer the remainder, and describe your efforts to ascertain information that would enable you to answer.

5. These Interrogatories are of a continuing nature and should be supplemented in accordance with Fed. R. Civ. P. 26(e).

6. "Person" means any natural person, group of natural persons, corporation, partnership, government agency or board, association, proprietorship, organization, or any other legal entity.

7. "You," "your," or "DOA" refers to the Dorchester Owners' Association as well as its agents, partners, employees, representatives, and any person or entity acting or purporting to act on its behalf.

8. "The Dorchester" refers to The Dorchester on Rittenhouse Square, at 226 W Rittenhouse Square, Philadelphia, PA 19103, and all real property associated therewith.

9. "Identify," "Identification," or "Identity" means:

    a. When used in reference to a natural person, the person's full name, dates of agency or employment (if the natural person is, or was at any

time, an agent or employee), and the last known business and residence address (including the specific apartment), telephone number and email address;

b. When used in reference to a document, the type of document (*i.e.*, letter, memorandum, telegram, chart, etc.), a brief description of the nature of the information in the document, its author or originator, its date or dates, all addresses and recipients, and its present location or custodian. If any such document was, but is no longer in your possession or subject to your control, state additionally the approximate date it was lost, discarded, or destroyed, and the identity of each person who has knowledge of the contents thereof or of the circumstances of the destruction;

c. When used in reference to a business entity, the structure of the business (*i.e.*, corporation, partnership, sole proprietorship, etc.), a brief description of the nature of the business, and the business address and telephone number; and

d. When used in reference to real property, the name (if any) of the development, the full address, the legal description of the property, the type of structure (*e.g.*, commercial, single-family residential, rental apartment, condominiums, cooperative apartments, etc.), the number of units, and sources of financing.

10. "Document" or "documents" mean records; books; papers; contracts; memoranda; invoices; correspondence; notes; minutes of any meetings (including but not

limited to those of the Dorchester Owners' Association Council or board of directors)

and other writings of directors, appointees, officials, employees, agents; instructions;

guides; compilations of rules, regulations, or policies; daybooks; ledgers; calendars;

photographs; emails; facsimiles including cover sheets; messages; drawings; maps;

diagrams; charts; graphs; other writings; audio or video recordings; mechanical or

electronic information storage or recording elements; and any other "documents" as that

word is defined in Fed. R. Civ. P. 34.

11.     "Relate" or "relating to" means showing, reflecting, referring to, constituting,

evidencing, or concerning in any way.

12.     The singular shall be deemed to include the plural, and vice versa.  The

masculine shall be deemed to include the feminine, and vice versa.  The disjunctive shall be

deemed to include the conjunctive, and vice versa.

13.     "Disability" means "handicap" within the meaning of 42 U.S.C. § 3602(h),

defined as "a physical or mental impairment which substantially limits one or more of [a]

person's major life activities."

14.     "Reasonable accommodation" means a change made in the "rules, policies,

practices, or services, when such accommodations may be necessary to afford [a person with a

disability] equal opportunity to use and enjoy a dwelling," within the meaning of 42 U.S.C. §

3604(f)(3)(B).

15.     "HUD" means the United States Department of Housing and Urban

Development.

## INTERROGATORIES

**1.**     Identify each person whom you believe has information or knowledge of facts

or information concerning the allegations in the United States' Complaint in this action, and provide for each such person identified, a summary of the facts or information in his or her possession relating to the allegations in the United States' Complaint in this action.

**RESPONSE:**

**2.** Provide a complete description of the DOA's organization, management, and employees, including, but not limited to, (1) the date each employee was hired and his or her title and a description of duties, and (2) all persons who have served as council members or officers, the time period they held such a position, and the duties and responsibilities of all council members or officers, since January 1, 2009.

**RESPONSE:**

**3.** Identify all DOA employees with supervisory duties, including dates of employment, titles, and duties and responsibilities, since 2009.

**RESPONSE:**

**4.** Identify all policies, written or unwritten, adopted by the DOA concerning

reasonable accommodations for persons with disabilities, including but not limited to policies concerning assistance animals since 2009, and state the time periods that said policies, rules, and practices were in effect. As part of this description, for each policy, identify the date the policy was formally adopted and identify any documents, including minutes of council or board of directors' meetings, in which the policy was proposed, discussed, and adopted, and state the reason(s) why such policies, rules, and practices were implemented or revised.

**RESPONSE:**

**5.**     Identify all individuals who participated in the drafting and adoption of the policies described in Interrogatory no. 4, specifying which policy the individual(s) participated in the drafting or adoption of, and stating the role they played in such drafting or adoption.

**RESPONSE:**

**6.**     Identify all persons who have made requests for reasonable accommodations to any of DOA's policies, whether because of their own disability or on behalf of another person with a disability, including but not limited to requests for assistance animals, since 2009. For each person identified, please state:

A.   the nature of the reasonable accommodation requested;

B.  the date the request was made;

C.  whether the accommodation was granted or denied;

D.  the date the request was granted or denied; and

E.  if denied, state the reasons for the denial.

**RESPONSE:**

**7.**      For each individual identified in response to interrogatory no 6, identify each person who participated in DOA's decision-making process concerning the decision to grant or deny the requested accommodation, including any individuals who made recommendations concerning the decision.

**RESPONSE:**

**8.**      Describe why the DOA denied Ms. Hamburg's request for a reasonable accommodation as communicated in a letter to Ms. Hamburg from Joshua Horvitz dated December 28, 2017.

**RESPONSE:**

**9.**      Identify the individuals who participated in DOA's denial of Ms. Hamburg's request for a reasonable accommodation, including any individuals who made recommendations concerning the decision, as communicated in a letter to Ms. Hamburg from Joshua Horvitz dated December 28, 2017.

**RESPONSE:**


**10.** Identify any guidance or policy regarding compliance with the Fair Housing Act or any equivalent state or local law that you have adopted at any time, including the date it was adopted, the person(s) responsible for developing it, to whom it was disseminated, and the method of dissemination.

**RESPONSE:**


**11.** Describe any and all trainings concerning the Fair Housing Act taken by DOA council members or members of the board of directors, or DOA employees, the date on which such training took place, the person(s) who conducted the training(s), the location where the training(s) took place, and the topics covered.

**RESPONSE:**


**12.** Identify and describe in detail all policies, rules, and practices, whether written or unwritten, that have been in effect since January 1, 2009, relating to pets, service animals, assistance animals, or any animals at the Dorchester, including the time periods that said policies, rules, and practices were in effect. As part of this description, for each policy, identify (1) the date the policy was formally adopted; (2) any documents, including minutes of council or board of directors' meetings in which the policy was proposed, discussed, and adopted; and

(3) state the reason(s) why such policies, rules, and practices were implemented or revised.

**RESPONSE:**

 

 

**13.** Identify all individuals who participated in the drafting and adoption of the policies described in Interrogatory no. 12, specifying which policy the individual(s) participated in the drafting or adoption of, and stating the role they played in such drafting or adoption.

**RESPONSE:**

 

 

**14.** Identify all complaints made either directly to you or made against you to any court, federal, state, or local agency, or non-governmental organization, related to housing discrimination. For each complaint, identify the complaining party, the entity with which it was filed, the nature of the complaint, and its disposition.

**RESPONSE:**

 

 

**15.** State the DOA's financial status and net worth, listing all assets and liabilities, and identify any and all documents that describe or otherwise relate to net worth, including, but not limited to, all financial net worth statements prepared by, or at the request of, the DOA for at least three fiscal years. Alternatively, you may answer this Interrogatory by

completing the attached "Financial Statement of Debtor" or "Financial Statement of Business" as appropriate.

**RESPONSE:**

**16.** Identify each person who assisted or participated in answering these Interrogatories and state for which Interrogatory each person provided responsive information.

**RESPONSE:**

**17.** If you or anyone acting on your behalf has conducted any investigation, inspection, or examination with respect to this lawsuit or the allegations you presented in this lawsuit, state the nature of the investigation, inspection, or examination that was conducted, the name and address of every person who conducted such investigation, inspection or examination, the date of such investigation, inspection or examination, the results of such investigation, inspection or examination, and whether each such person issued a report regarding the outcome of such investigation, inspection or examination. If any such person issued a report, please attach it to your answer to this Interrogatory.

**RESPONSE:**

**18.** State when and how DOA learned of

A.  the State of California Board of Behavioral Sciences' investigation

into Louise Hamburg's Psychotherapist Carla Jeanne Black, MA,

MFT, ATR License Number 44511 (CA);

B.  that the State of California Board of Behavioral Sciences had entered

into the October 18, 2018 Stipulated Settlement and Disciplinary

Order that the DOA attached as Exhibit "A" to its Answer to the

Complaint.

**RESPONSE:**

**DATED:**            **September 2, 2020**

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief
Housing and Civil Enforcement Section

*/s/ Mazen M. Basrawi*
ANDREA K. STEINACKER
Special Litigation Counsel
MAZEN M. BASRAWI
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St., NE/ 6.1134
Washington, DC 20530
Telephone: (202) 305-1876

Fax: (202) 514-1116
mazen.basrawi@usdoj.gov

Attorneys for Plaintiff UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

THE UNITED STATES OF AMERICA, :  NO. 2:20-cv-01396-MMB
            :
     Plaintiff,    :
            :
LOUISE HAMBURG,     :
            :
    Plaintiff Intervenor, :
            :
    v.       :
            :
THE DORCHESTER OWNERS'  :
ASSOCIATION,      :
            :
     Defendant.  :   CIVIL ACTION

---

## <u>CERTIFICATE OF SERVICE</u>

I, AMANDA L. BAILEY, certify that a true and correct copy of Plaintiff United States'

First Set of Interrogatories to Defendant Dorchester Owners' Association was served upon all

counsel of record and any unrepresented parties via email on this date as follows:

Paul C. Troy, Esquire
Thomas J. Zimmerman, Esquire
Kane, Pugh, Knoell, Troy & Krammer LLP
510 Swede St.
Norristown, PA 19401
610-275-2000
tzimmerman@kanepugh.com
ptroy@kanepugh.com


Alexander B. Wright, Esquire
Margaret S. Coleman, Esquire
The Law Offices of Timothy P. O'Brien
Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, Pennsylvania 15222
abw@obrienlawpgh.com
msc@obrienlawpgh.com

Respectfully submitted,

*/s/ Amanda L. Bailey*
AMANDA L. BAILEY

Date:  September 2, 2020

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | NO. 2:20-cv-01396-MMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | |
| Plaintiff Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DORCHESTER OWNERS' ASSOCIATION, | : | |
| | : | |
| Defendant. | : | CIVIL ACTION |

**PLAINTIFF UNITED STATES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DORCHESTER OWNERS' ASSOCIATION**

**INSTRUCTIONS AND DEFINITIONS**

1. In accordance with Federal Rule of Civil Procedure 34, the United States requests that the Defendant Dorchester Owners' Association ("DOA") produce the following documents within 30 days by overnight delivery[1] to:

Mazen Basrawi
Trial Attorney
U.S. Department of Justice
Civil Rights Division, Housing & Civil Enforcement Section
4 Constitution Square
150 M Street NE/ 6.1134
Washington, DC  20530

---

[1] This address cannot receive U.S. mail.

2. All documents shall be produced in accordance with Attachment A to these Requests, which describes the form of production as well as provides for the protected use of confidential and sensitive information that may need to be produced in accordance with the Protective Order, ECF 21. If, before Defendant produces documents responsive to these Requests, the parties stipulate to forms and methods of production, or if the Court enters an order governing those issues in this case, then Defendant must follow the provisions of that stipulation or order that supersede Attachment A.

3. These requests apply to all documents in the possession, custody, or control of the DOA regardless of their location and regardless of whether such documents are held by the DOA's agents, employees, representatives, attorneys, or any other person.

4. "Document" or "documents" mean records; books; papers; contracts; memoranda; invoices; correspondence; notes; minutes of any meetings (including but not limited to those of a partnership, corporation shareholders, board of directors, or Dorchester Owners' Association Council) and other writings of directors, appointees, officials, employees, agents; instructions; guides; compilations of rules, regulations, or policies; daybooks; ledgers; calendars; photographs; e-mails; facsimiles including cover sheets; messages (including messages sent through mobile devices such as SMS texts or messages sent through social media); drawings; maps; diagrams; charts; graphs; other writings; audio and video recordings; mechanical or electronic information storage or recording elements;

and any other "documents" as that word is defined in Fed. R. Civ. P. 34.

5. These requests are continuing in nature. In the event the DOA becomes aware of or acquires possession, custody, or control of additional responsive documents, the DOA shall immediately produce such additional documents for inspection and copying.

6. Pursuant to Federal Rule of Civil Procedure 34, documents shall be produced either 1) as they are kept in the usual course of business, or 2) shall be physically or electronically segregated from documents produced in response to any other requests, and the request to which they are responsive shall be specifically identified. If a document is responsive to more than one request, please specify each of the requests to which the document is responsive.

7. All non-identical copies of every document whose production is sought shall be separately produced. "Non-identical copies" means any copy of a document that is not identical to any other copy thereof, by reason of alterations, marginal notes, comments, or other material contained thereon or attached thereto, or otherwise.

8. In producing the documents, all documents that are physically or electronically attached to each other shall be left so attached. Documents which are segregated from other documents, whether by inclusion in folders, subfolders, binders, files, subfiles, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they were maintained in the file where found.

9. If an objection to a request is based on a claim of privilege, attorney-work product, or any other basis, please provide an appropriate privilege log in accordance with

Federal Rule of Civil Procedure 26(b)(5)(a).

10. Identify and produce all separable portions of any responsive document to which a claim of privilege, attorney-work product, or other basis for withholding the document does not apply.

11. Identify all responsive documents that have been lost, discarded, or destroyed. In so doing, state the type of document, its date, the approximate date it was lost, discarded, or destroyed, the circumstances under which it was lost, discarded, or destroyed, and the identity of each person having knowledge of the contents thereof.

12. "Person" means any natural person, group of natural persons, corporation, partnership, government agency or board, association, proprietorship, organization, or any other legal entity.

13. "You," "your," or "DOA" refers to the Dorchester Owners' Association as well as its agents, partners, employees, representatives, and any person or entity acting or purporting to act on its behalf.

14. "The Dorchester" refers to The Dorchester on Rittenhouse Square, at 226 W. Rittenhouse Square, Philadelphia, PA 19103 and all real property associated therewith.

15. "Identify," "relate" or "relating to" means showing, reflecting, referring to, constituting, evidencing, or concerning in any way.

16. The singular shall be deemed to include the plural, and vice versa. The masculine shall be deemed to include the feminine, and vice versa. The disjunctive shall be deemed to include the conjunctive, and vice versa.

17. "<u>Disability</u>" means "<u>handicap</u>" within the meaning of 42 U.S.C. § 3602(h), defined as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities."

18. "<u>Reasonable accommodation</u>" means an exception to the "rules, policies, practices, or services, when such accommodations may be necessary to afford [a person with a disability] equal opportunity to use and enjoy a dwelling," within the meaning of 42 U.S.C. § 3604(f)(3)(B).

19. "<u>HUD</u>" means the United States Department of Housing and Urban Development.


## <u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

1. All of DOA's governing documents, including its bylaws and policies, since 2009.

   **RESPONSE:**


2. All documents related to the drafting, consideration, and adoption of policies concerning compliance with the Fair Housing Act's requirements for reasonable accommodations for persons with disabilities, including but not limited to, draft policies and communications to, from, among, and between DOA council members and DOA employees or agents about such policies.

   **RESPONSE:**


3. All documents related to council meetings in which policies on reasonable accommodations for persons with disabilities were discussed, including but not limited to meeting notices, draft and actual agenda, meeting minutes, documents prepared for council members, notices

of meetings, and communications to, among and between DOA council members and/or DOA employees or agents prior to or following such meetings concerning the meetings or discussions therein.

   **RESPONSE:**

4. All documents related to the drafting, consideration, and adoption of policies concerning pets, service animals, or assistance animals at the Dorchester, including but not limited to, draft policies and communications to, from, among, and between DOA council members and/or DOA employees or agents.

   **RESPONSE:**

5. All documents related to council meetings in which pets, service animals, or assistance animals were discussed, including but not limited to, meeting notices, draft and actual agenda, meeting minutes, documents prepared for DOA council members, notices of meetings, and communications to, among and between council members or DOA employees or agents prior to or following such meetings concerning the meetings or discussions therein.

   **RESPONSE:**

6. All documents containing records of or relating to requests for reasonable accommodations for a person with a disability, including but not limited to requests for assistance animals, since 2009. If documents responsive to this request are part of a resident file, produce the file in its entirety.

**RESPONSE:**

7. All documents related to decisions on or requests for reasonable accommodations for persons with disabilities, including but not limited to requests for assistance animals. Documents responsive to this request may include, but are not limited to, meeting or hearing notices, minutes of hearings or meetings, documents prepared for DOA council members, and communications to, from, among, and between DOA council members or DOA employees or agents.

   **RESPONSE:**

8. All documents related to Louise Hamburg, including but not limited to, her file and her request for a reasonable accommodation. Documents responsive to this request include, but are not limited to, communications to, from, among, and between DOA council members and/or DOA employees or agents about Ms. Hamburg.

   **RESPONSE:**

9. All documents related to Bernard and/or Cynthia Halpern, including but not limited to their file(s) and their request for a reasonable accommodation. Documents responsive to this request include, but are not limited to, communications to, from, among, and between DOA council members and/or DOA employees or agents about Bernard and/or Cynthia Halpern.

   **RESPONSE:**

10. All documents relating to trainings, meetings, or other programs that addressed the

Fair Housing Act and any equivalent state or local fair housing requirements, that the DOA or any of its employees, representatives, or agents attended from January 1, 2009, to the present.

**RESPONSE:**

11. All manuals, training materials, personnel instructions, memoranda, or other documents that relate to the FHA, the Americans with Disabilities Act, state or local disability laws, persons with disabilities, or reasonable accommodations provided to DOA employees, agents, or council members.

    **RESPONSE:**

12. All documents related to the presence of pets, service animals, or assistance animals at the Dorchester. Documents responsive to this request include, but are not limited to, communications to, from, among, and between DOA's council members and/or DOA employees or agents, and video or audio recordings of the common areas of the Dorchester demonstrating the presence of pets, service animals or assistance animals at the Dorchester, since 2009.

    **RESPONSE:**

13. All documents concerning the enforcement of DOA's "no pets" policy. Documents responsive to this request include, but are not limited to, notices of violation, hearing notices, communications to, from, among, and between DOA's council members and/or DOA employees or agents, and video or audio recordings of the common areas of the

Dorchester used in any such enforcement effort, since 2009.

**RESPONSE:**

**14.** All documents related to complaints made either directly to the DOA or made against the DOA to any court, federal, state, or local agency, or non-governmental organization, related to housing discrimination.

**RESPONSE:**

**15.** All documents that support, refute, are relevant to, or otherwise relate to each affirmative defense contained in your Answer (ECF No. 12).

**RESPONSE:**

**16.** Each and every insurance or indemnity agreement under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

**DATED:**           **September 2, 2020**


ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division


SAMEENA SHINA MAJEED
Chief
Housing and Civil Enforcement Section



*/s/ Mazen M. Basrawi*
ANDREA K. STEINACKER
Special Litigation Counsel
MAZEN M. BASRAWI
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St., NE/ 6.1134
Washington, DC 20530
Telephone: (202) 305-1876
Fax: (202) 514-1116
mazen.basrawi@usdoj.gov


Attorneys for Plaintiff UNITED STATES OF AMERICA

**ATTACHMENT A**

**TO PLAINTIFF UNITED STATES OF AMERICA'S FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO DORCHESTER OWNERS' ASSOCIATION**

Defendant Dorchester Owners' Association's ("DOA") production of documents, electronically stored information ("ESI"), and tangible things requested in the United States' First Set of Requests for Production ("Requests") shall be produced as set forth in the Requests and as further specified below.

1. **Form of Production**

   a. ESI and hard copy paper documents must be produced in "load ready" format as specified herein.

   b. Each hard copy paper document must be scanned as a single electronic image file.

   c. ESI must be processed with eDiscovery software that extracts metadata and text and converts the document to an image format that accurately represents the full contents of the document.

   d. Black and white images shall be scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that accurately reflects the full and complete information contained in the original document. One image file shall represent one page of the document. Color images shall be produced as JPEG files at 300 d.p.i. using a high-quality setting.

e.  For ESI and scanned hard copy paper documents, the text of all pages in the document must be saved as one file. If the extracted text of a native document does not exist or does not represent the entire document, Optical Character Recognition ("OCR") will be provided instead.  OCR is searchable text generated for scanned documents or native files that is in ASCII format, where all pages in the document will be represented in one file.

f.  Metadata must be preserved and produced for the fields listed in Table 1 below.

g.  Deduplication will be used to remove exact duplicate documents from the production.   Use MD-5 hash values for deduplication and calculate those values for all ESI at the time of collection or processing.

h.  Use of Search Criteria to Identify ESI:  It is the responsibility of the Defendant to a discovery request to identify and produce responsive information including ESI. Defendant should contact counsel for the United States to meet and confer if Defendant believes that the use of keyword search criteria or analytic tools should be used to identify responsive ESI.

i.  All productions will provide a consistent load file with the same number and order of fields regardless of the

types of documents in the production.

j.   All images (*e.g.*, TIFF, JPEG) will be produced in a directory labeled IMAGES.  Subdirectories may be created so that one directory does not contain more than 5000 files.

k.   All native files (with the proper Windows-associated extension) will be produced in a directory labeled NATIVE.  Subdirectories may be created so that one directory does not contain more than 5000 files.

l.   An image cross reference file (a file in Concordance Opticon/Relativity .log format that contains Bates Numbers, paths to images, and document break indicators for all ESI in each production) and a load file containing all required metadata fields will be produced in a directory labeled DATA.

m.  All extracted text and/or OCR will be produced in a directory labeled TEXT.  The parties agree to provide a text file for all documents, even if the size of the file is zero. Subdirectories may be created so that one directory does not contain more than 5000 files.

n.   Except for native files, Defendant will produce responsive documents Bates-stamped with a prefix to indicate the party producing the documents (*i.e.*, DOA____).  For native files, which cannot be Bates-stamped, the Parties will rename the file as [Document Identification

Number].[extension] with a placeholder image in the production containing the name of the file before it was changed.

    o.  Specifications for Specific File Types:

    i.      Emails are ESI and should be produced in accordance with Section 1(c) *supra*.

    ii.     Text messages will require counsel to meet-and-confer before Defendant collects or prepares to produce the responsive messages. Defendant should contact counsel for the United States to meet-and-confer and should be prepared to discuss the expected number of devices, expected volume (number of messages and/or conversations), the mobile operating systems involved and approximate age, and available collection tools.

    iii.    Audio files and video files shall be produced as native files unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player. For each audio or video file, a placeholder image containing the file name shall be included in the production.

    iv.    Excel or other types of spreadsheets shall be produced as native files with all cells unlocked. For each Excel or spreadsheet file, a placeholder image containing the file name shall be included in the production.

    v.     PowerPoint files shall be produced as both (1) as color images with extracted text and (2) as native files with all notes unaltered and viewable. For each PowerPoint, a placeholder image containing the file name shall be included in the

production.

vi.        Social media content (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text, including information about the participants and the date and time of the communications.

vii.        For production of tangible things and production of information from a structured database, proprietary software, or vendor-managed software, the parties will meet-and-confer before making any production to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things or documents.

viii.        Oversized documents (*e.g.*, maps, architectural, engineering, or zoning plans) must be produced as JPEG images or in hard copy paper form so as to retain the resolution and scale of the original document.

2.    **Production Specifications**

a.       Productions will be clearly labeled and/or in folders to indicate (a) the name of the Defendant producing the documents, (b) the date of the production, and (c) the Bates-range.

b.       If Defendant needs to redact a portion of a document for which only a native file would be produced, Defendant will request a meet-and-confer with counsel for the United States regarding production of the redacted document.

c.       Defendant must remove all encryption or password protection for all ESI produced.  In the alternative, Defendant must provide passwords or assistance needed to open encrypted files.

**Table 1 – Metadata Fields**

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| **Begin_Bates** | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **End_Bates** | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **Begin_Attach** | <u>Only</u> for document families,[2] provide Bates number for the first image of the first attachment or embedded file. Leave this field blank if there is no document family. | Y | Y | Y |
| **End_Attach** | <u>Only</u> for document families, provide Bates number for the last image of the last attachment or embedded file. Leave this field blank if there is no document family. | Y | Y | Y |
| **Parent ID** | Bates number of the parent document (filled in only for "child" documents). | Y | Y | Y |
| **PgCount** | The number of | Y | Y | Y |

[2] Document Family means a group of related documents, including: (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents

| | | | | |
|---|---|---|---|---|
| | images produced for this document (1 for placeholder). | | | |
| **From** | "From" field in email. | Y | | |
| **To** | "To" field in email. | Y | | |
| **CC** | "CC" field in email. | Y | | |
| **BCC** | "BCC" field in email. | Y | | |
| **Subject** | "Subject" field in email. | Y | | |
| **Attachments** | File names of the attachments. | Y | | |
| **DateSent** | DateSent field from email. Include both date and time (format: 9/28/2012 1:16 PM or 9/28/2012 13:16:34). | Y | | |
| **Redacted** | "Yes" if the document has been redacted. | Y | Y | Y |
| **Confidential** | Confidential Designation (if any). | Y | Y | Y |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. | Y | Y | |
| **Prod_FilePath** | The path to the native file on the production media. | | Y | |
| **Native_filename** | Original name of the native file when the file was collected or processed. | Y | Y | |
| **Text File Path** | Path to the text file on the production media. | Y | Y | Y |
| **Date File Created** | The date the ESI | | Y | |

| | was created. | | | |
|---|---|---|---|---|
| **Date File Last Modified** | The date the ESI was last modified. | | Y | |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | NO. 2:20-cv-01396-MMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | |
| Plaintiff Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DORCHESTER OWNERS' ASSOCIATION, | : | |
| | : | |
| Defendant. | : | CIVIL ACTION |

## <u>CERTIFICATE OF SERVICE</u>

I, AMANDA L. BAILEY, certify that a true and correct copy of the Plaintiff United

States' First Request for Production of Documents to Defendant Dorchester Owners' Association

was served upon all counsel of record and any unrepresented parties via email on this date as

follows:

Paul C. Troy, Esquire
Thomas J. Zimmerman, Esquire
Kane, Pugh, Knoell, Troy & Krammer LLP
510 Swede St.
Norristown, PA 19401
610-275-2000
tzimmerman@kanepugh.com
ptroy@kanepugh.com


Alexander B. Wright, Esquire
Margaret S. Coleman, Esquire
The Law Offices of Timothy P. O'Brien
Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, Pennsylvania 15222

abw@obrienlawpgh.com
msc@obrienlawpgh.com

Respectfully submitted,

*/s/ Amanda L. Bailey*
AMANDA L. BAILEY

Date:   September 2, 2020

**Exhibit C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | NO. 2:20-cv-01396-MMB |
| Plaintiff Intervenor, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| THE DORCHESTER OWNERS' | : | |
| ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |

**OBJECTIONS AND RESPONSES OF THE DORCHESTER OWNERS' ASSOCIATION
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

I.   **PREAMBLE**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and subject

to the general and specific objections presented, the Dorchester Owners' Association (hereinafter

"DOA"), by its counsel, hereby responds to the Plaintiff's First Set of Interrogatories.  Discovery

has barely commenced.  The Plaintiff presented evasive and inadequate responses to the

discovery requests that the DOA presented to Plaintiff.  Intervenor-Plaintiff, Louise Hamburg,

has not provided even one response to the DOA's discovery requests, and discovery will proceed

over the next several months.  Accordingly, the DOA reserves the right to assert additional

objections and provide additional responses as it receives appropriate and complete discovery

responses from Plaintiff, and Intervenor-Plaintiff, and as discovery proceeds.

II.   **GENERAL OBJECTIONS**

These general objections apply to each Interrogatory, as though restated in full in

the DOA's response to each Interrogatory.

The DOA objects to any and all Interrogatories to the extent that they seek information protected from disclosure by the attorney/client, attorney work product or any other applicable privilege. Any inadvertent disclosure of work product or attorney-client communications shall not constitute the waiver of any attorney/client, attorney work product or any other applicable privilege.

The DOA objects to any and all Interrogatories to the extent that they seek disclosure of beliefs, mental impressions, conclusions, legal research and/or legal theories of counsel. Any inadvertent disclosure of work product shall not constitute the waiver of any work product protection.

The DOA objects to any and all Interrogatories to the extent that they seek information of a confidential and proprietary nature on the grounds that such information, if it is otherwise discoverable, should not be provided unless and until an appropriate order protecting the confidentiality of such information has been entered.

The DOA objects to any and all Interrogatories requesting identification of documents "concerning," "related to" or "relating to" a particular fact, action, discussion, allegation, etc. as being non-specific, incapable of answer, vague, undefined, subjective, overly broad and unduly burdensome.

The DOA objects to any and all Interrogatories which ask for information that is not within the DOA's knowledge, information, possession or control.

The DOA objects to any and all Interrogatories to the extent that they seek irrelevant information, proprietary or confidential information, or information which is overly broad or unduly burdensome or which is not properly limited in scope or which is not reasonably calculated to lead to the discovery of admissible evidence.

The DOA objects to any and all Interrogatories which are vague, ambiguous or otherwise incomprehensible.

The DOA objects to any and all Interrogatories to the extent that they seek legal conclusions.

The DOA reserves the right to supplement, amend, correct, or clarify its answers and objections to these Interrogatories as the Plaintiff and Intervenor-Plaintiff respond properly to the DOA's discovery requests and as circumstances warrant.

The DOA objects to the "Instructions" preceding the Interrogatories to the extent that they purport to impose obligations upon the DOA that go beyond, or are inconsistent with, or not required by, the Federal Rules of Civil Procedure. The DOA will respond in conformance with the Federal Rules of Civil Procedure and ignore other contrary instructions.

The DOA objects to the "Definitions" preceding the Interrogatories to the extent that they offer improper, inaccurate, or incorrect descriptions of the terms they seek to define, or seek to require the DOA to provide or identify information or documents beyond the scope of what is required by the Federal Rules of Civil Procedure. The DOA will respond in conformance with the Federal Rules of Civil Procedure and ignore other contrary instructions.

The DOA objects to any and all Interrogatories to the extent they seek information that is not in the possession, custody or control of the DOA.

The DOA objects to any and all Interrogatories to the extent they seek confidential or proprietary information, business information, competitively sensitive information, the financial information of the DOA, the personal information of any DOA owners, residents, employees or other individuals, or information otherwise protected, disclosure of which would be harmful to the DOA's business interests or would invade the DOA's privacy

or the privacy rights of the DOA's management, employees, owners, residents, customers or other persons or entities to which the DOA owes any duty.

The DOA objects to any and all Interrogatories to the extent that they seek, or purport to require, the identification, review, or access of electronically stored information that the DOA does not own or control, was created by the DOA's owners, residents, employees, is not reasonably accessible because of undue cost or burden, or is not proportional to the needs of this case.

Discovery is ongoing, and the DOA reserves the right to amend and/or supplement its responses in accordance with the Federal Rules of Civil Procedure, local rules, Judge Baylson's procedures, and/or the Court's scheduling orders.

The DOA objects to any and all Interrogatories to the extent that they seek documents and/or information already in the possession of Plaintiff.

The DOA objects to any and all Interrogatories to the extent that they do not identify a time frame, or identify the overbroad time frame of January 1, 2009 to present, as such requests are not proportional to the needs of Plaintiff's case. The DOA will limit its response to the time relevant to Plaintiff's Complaint: from Louise Hamburg's December 25, 2017 email to present.

All responses are made subject to these General Objections. The fact that the DOA may have supplied information in response to any particular Interrogatory does not constitute an admission or acknowledgment that the information sought is relevant or admissible in any proceeding or at trial. By supplying any information, the DOA does not intend to, and does not, waive any of its general or specific objections to any and all Interrogatories. The DOA

reserves the right to supplement, amend, correct, or clarify their responses and objections to the Interrogatories.

## III.    CONDITIONS

The DOA's responses are made without waiving or intending to waive, but on the contrary, intending to preserve and preserving (a) all objections as to confidentiality, relevancy, materiality, privilege or admissibility of evidence for any purpose in subsequent proceedings or the trial of this or any other actions; (b) the right to object to the use of any information which may be provided, or the subject matter thereof, in subsequent proceedings or the trial of this or any other action on any other ground; (c) the right to object on any grounds at any time to further discovery proceedings involving or relating to the subject matter of the interrogatories and document requests; (d) the right at any time to revise, correct, supplement, clarify or amend this response.

Documents which the DOA already has provided to Plaintiff or which are already in Plaintiff's or its counsel's possession, or for any other reason, will not be produced a second time.

## IV.    RESPONSES

## INTERROGATORY 1

As the Plaintiff stated  in its objections to many of the interrogatories and requests for documents that the DOA propounded to Plaintiff, what the DOA "knew or did not know at any particular point has no bearing on whether the DOA unlawfully denied Ms. Hamburg a reasonable accommodation for an assistance animal."  As the Plaintiff objected on that basis, so also the DOA objects on the ground that this inquiry seeks information that is not relevant to the parties' claims or defenses in this case, and it is unduly burdensome and not proportional to the needs of the case.  The DOA objects to this inquiry on the grounds that it is overly broad, unduly

burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. As the Plaintiff recognizes and alleged in Paragraph 6 of its Complaint, the DOA is an Association not a person. Unlike people, an Association does not have the faculty to "believe," or the facility to formulate beliefs as suggested by this Interrogatory.

Subject to and without waiver of the foregoing objections, present and former members of the DOA council, management, employees, owners and residents of the Dorchester, representatives of the Plaintiff and its agencies and departments, Ms. Hamburg, her counsel, counsel for the DOA, HUD employees and agents of the United States, and/or other persons and entities that discovery will reveal, may have information or knowledge of facts or information concerning the allegations in Plaintiff's Complaint and the DOA's defenses to those allegations.

**INTERROGATORY 2**

The DOA objects to the Plaintiff's direction to "provide a complete description of the DOA's organization, management, and employees, including, but not limited to …" as grossly overbroad, unduly burdensome, lacking reasonable temporal limits, not proportional to the needs of the case, impossible to answer, and beyond the scope of permissible discovery.

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges. The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the parties' claims or defenses in this case.

Subject to and without waiver of the foregoing objections, since December 2017, the following individuals have served as members of the DOA Council: Francis P. Devine, Jeff DiSabatino (until approximately May 2018), Susan Freedman, Ed Kurland, Jim Morgan (since approximately May 2018), Mary Lou Savarese, Joseph Weiss, and Joseph Wolf. By way of further answer, Patricia Yonekawa served as general manager of the DOA until she retired on August 31, 2019. Kyle Maloney has served as the director of resident services since approximately 2012. David Smith has served as the DOA general manager since August 1, 2019.

**INTERROGATORY 3**

The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, lacking reasonable temporal limits and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. The DOA objects to the term "supervisory duties" as vague, confusing, unintelligible, unnecessarily subjective, non-specific and incapable of interpretation as the Plaintiff uses the term in this Interrogatory.

Subject to and without waiver of the foregoing objections, see Response to Interrogatory No. 2.

**INTERROGATORY 4**

The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, lacking reasonable temporal limits and seeks information that is not relevant to the parties' claims or defenses in this case.

Subject to and without waiver of the foregoing objections, the DOA previously provided all of its relevant policies concerning assistance animals to HUD and/or Mazen Basrawi, Esq.

**INTERROGATORY 5**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges. The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. The DOA objects to the Plaintiff's non-specific use of the term "participated" as vague, confusing, undefined, unintelligible, incapable of interpretation, overbroad, imprecise, and irrelevant.

Subject to and without waiver of the foregoing objections, Francis Devine drafted relevant policies concerning assistance animals with assistance of counsel, after which the DOA Council approved and adopted the policies.

**INTERROGATORY 6**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by attorney work-product and attorney client doctrines and privileges. The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, lacking reasonable temporal limits and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this

inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. As Plaintiff stated in its objections to many of the interrogatories and requests for documents that the DOA propounded to Plaintiff, the information requested by this Interrogatory "has no bearing on whether the DOA unlawfully denied Ms. Hamburg a reasonable accommodation for an assistance animal."  As the Plaintiff objected on that basis, so also the DOA objects on the ground that this Interrogatory seeks information that is not relevant to the parties' claims or defenses in this case, and is unduly burdensome and not proportional to the needs of the case.  By way of further response, if any persons "have made requests for reasonable accommodations to any of DOA's policies, whether it be caused by their own disability or on behalf of another person with a disability, including but not limited to, requests for assistance animals," federal, state and other laws protect their identity from disclosure, as the Plaintiff repeatedly has stated in its responses to the DOA's Interrogatories (Set I and Set II) and the DOA's Requests for Production of Documents.

**INTERROGATORY 7**

See the DOA's objections to the term "participated" as stated in response to Interrogatory 5 above, as well as the DOA's objections and response to Interrogatory 6 which are incorporated herein by reference.  As the DOA interprets Plaintiff's inquiry, the DOA Council makes decisions for the DOA, "concerning" decisions to grant or deny requests for accommodations.

**INTERROGATORY 8**

At or around 9:10 p.m. on Christmas night of 2017, Ms. Hamburg sent an email to Ms. Yonekawa stating "I will be bringing my Emotional Support Animal with me to the Dorchester.  Please advise all staff there that we are allowed into the building."  A copy of Ms.

Hamburg's email has already been produced by the DOA and should be read as part of this response. Ms. Hamburg had not made any requests of the DOA or DOA's management prior to her Christmas night email and had not provided the information requested by the DOA for permitting assistance animals into the building. Because the DOA Council did not have any meetings scheduled between Christmas night and December 28, 2017, and because many Council members were either out of town or otherwise unavailable, Attorney Horvitz wrote his December 28, 2017 letter to Ms. Hamburg. While the Plaintiff chooses to mischaracterize Mr. Horvitz's letter as a permanent denial of "Ms. Hamburg's request for a reasonable accommodation," it was not. To the contrary, Ms. Hamburg's 2017 Christmas night email did not request a reasonable accommodation. Further, Attorney Horvitz's December 28, 2017 letter to Ms. Hamburg specifically stated, "If you submit additional information, the Association will reconsider your request." As Mr. Horvitz suggested, on or about January 22, 2018, Ms. Hamburg subsequently submitted limited information to the DOA. At its next meeting, the DOA Council considered Ms. Hamburg's submission and initiated the interactive process, as recommended by the U.S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity ("HUD"). As Plaintiff knows, because it received and reviewed the HUD July 30, 2018 email (HUD-00000254), many months later HUD recognized and understood that the DOA did not deny Ms. Hamburg's request. Indeed, the DOA continued to reach out to Ms. Hamburg, inviting her to provide any credible and reliable information to support her request for an assistance animal. Ms. Hamburg declined to respond to those inquiries and chose not to participate in the interactive process that the DOA attempted to pursue with her.

**INTERROGATORY 9**

The DOA objects to the Plaintiff's non-specific use of the term "participated" as vague, confusing, undefined, unintelligible, incapable of interpretation, overbroad, imprecise and

irrelevant.  Subject to and without waiver of the foregoing objections, see Response to Interrogatory No. 8, which is incorporated herein by reference and should be read in its entirety in response to this Interrogatory.

**INTERROGATORY 10**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges.  The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. See the DOA's response to Interrogatory 4 above which is incorporated herein by reference and should be read in its entirety in response to this Interrogatory.  As Plaintiff stated in its objections to many of the interrogatories and requests for documents that the DOA propounded to Plaintiff, the information requested by this Interrogatory "has no bearing on whether the DOA unlawfully denied Ms. Hamburg a reasonable accommodation for an assistance animal."  As the Plaintiff objected on that basis, so also the DOA objects on the ground that this Interrogatory seeks information that is not relevant to the parties' claims or defenses in this case, and is unduly burdensome and not proportional to the needs of the case.

Subject to and without waiver of the foregoing objections, the DOA Council seeks advice of counsel on requests for accommodation and/or other fair housing questions. By way of further response, see the DOA's Assistance Animal Policies, already produced.

**INTERROGATORY 11**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges.  The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. See the DOA's response to Interrogatory 4 above which is incorporated herein by reference and should be read in its entirety in response to this Interrogatory.  As Plaintiff stated in its objections to many of the interrogatories and requests for documents that the DOA propounded to Plaintiff, the information requested by this Interrogatory "has no bearing on whether the DOA unlawfully denied Ms. Hamburg a reasonable accommodation for an assistance animal."  As the Plaintiff objected on that basis, so also the DOA objects on the ground that this Interrogatory seeks information that is not relevant to the parties' claims or defenses in this case, and is unduly burdensome and not proportional to the needs of the case.

Subject to and without waiver of the foregoing objections, the DOA Council seeks advice of counsel on requests for accommodation and/or other fair housing questions. See also Assistance Animal Policies, already produced. During these discussions, attorneys often speak with Council members and management about relevant topics in fair housing law. The DOA Council sought advice from attorneys Robert Cerino, Esquire; Steven Williams, Esquire; and Fineman, Krekstein and Harris, P.C.   The substance of those communications is protected by the attorney-client and work product privileges.

**INTERROGATORY 12**

        See the DOA's Response to Interrogatory No. 4 above, which is incorporated herein by reference and should be read in its entirety in response to this Interrogatory. Without clarification, Interrogatory 12 appears redundant to Interrogatory No. 4 above.

**INTERROGATORY 13**

        See the DOA's Response to Interrogatory No. 5 above, which is incorporated herein by reference and should be read in its entirety in response to this Interrogatory. Without clarification, Interrogatory 13 appears redundant to Interrogatory No. 5 above.

**INTERROGATORY 14**

        The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges. The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, lacks reasonable temporal limits and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. As the Plaintiff stated in its objections to many of the interrogatories and requests for documents that the DOA propounded to Plaintiff, the information requested in this interrogatory "has no bearing on whether the DOA unlawfully denied Ms. Hamburg's a reasonable accommodation for an assistance animal." Furthermore, Plaintiff has explicitly refused to provide identical information upon request of the DOA.

**INTERROGATORY 15**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges. The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is not relevant to the parties' claims or defenses in this case. The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals. Furthermore, this inquiry is premature as the Plaintiff stated in responding to many of the DOA's Interrogatories and Requests for Documents.

Subject to and without waiver of the foregoing objections, the DOA will provide such information if the Court so orders.

**INTERROGATORY 16**

See the DOA's objections and response to Interrogatory No. 5 above concerning the Plaintiff's use of the term "participate" which is incorporated fully herein by reference. Subject to and without waiver of the foregoing objections, DOA Council members and DOA management, with assistance of counsel.

**INTERROGATORY 17**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges. The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, lacks reasonable temporal limits and seeks information that

is not relevant to the parties' claims or defenses in this case.  The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals.

**INTERROGATORY 18**

The DOA objects to this inquiry on the grounds that information about the internal deliberations of the DOA Council, such as those expressly sought by this inquiry, are protected by the attorney work-product and attorney client doctrines and privileges.  The DOA objects to this inquiry on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, lacks reasonable temporal limits, and seeks information that is not relevant to the parties' claims or defenses in this case.  The DOA objects to this inquiry because the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals.

Subject to and without waiver of the foregoing objections, since January 2018, DOA Council members, DOA management, legal counsel and others have googled Carla Black, reviewed her websites, and examined news releases, newspaper, internet and other reports, articles and announcements and considered the materials Carla Black posted about herself,  her practice, and her management, and learned the information that those materials and the internet disclosed about Carla Black.  As a result and at this time, it is difficult to pinpoint precisely when the DOA learned that the State of California began its investigation of Carla Black, that the State of California and Carla Black agreed upon the Disciplinary Order and any other information the DOA Council learned about Carla Black.

Those searches revealed articles about assistance animal fraud, in which Ms. Black described herself as "America's leading authority" on emotional support animals. The articles also described unethical practices by Ms. Black, who for $99 prescribed emotional support

animals for persons with whom she had never met nor treated, contributing to fraud and misidentification of emotional support animals. While the DOA's retrieval process and research continues, certain of those materials are easily accessible on websites, including, but not limited to:

https://abc7.com/service-animals-fraud-therapy-air-travel/1773786/.

https://www.fox6now.com/news/baaad-medicine-abuse-of-emotional-support-animals-concerns-advocates-for-the-disabled.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

By: _/s/ Paul C. Troy_____
       PAUL C. TROY, ESQUIRE
       THOMAS J. ZIMMERMAN, ESQUIRE

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing Objections and Responses of the

Dorchester Owners' Association to Plaintiffs' First Set of Interrogatories was served upon the

following counsel of record via electronic mail this 2nd day of October, 2020:

Mazen M. Basrawi, Esquire
Housing & Civil Enforcement
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St., NE/ 6.1134
Washington, DC 20530
mazen.basrawi@usdoj.gov
Attorney for United States

Margaret Coleman, Esquire
The Law Offices of Timothy P. O'Brien
Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, Pennsylvania 15222
msc@obrienlawpgh.com
Attorney for the Plaintiff-Intervenor

/s/ Thomas J. Zimmerman
Thomas J. Zimmerman, Esquire

**Exhibit D**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | NO. 2:20-cv-01396-MMB |
| | : | |
| Plaintiff, | : | |
| | : | |
| LOUISE HAMBURG, | : | |
| | : | |
| Plaintiff Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| THE DORCHESTER OWNERS' ASSOCIATION, | : | |
| | : | |
| Defendant. | : | CIVIL ACTION |

**OBJECTIONS AND RESPONSES OF**
**THE DORCHESTER OWNERS' ASSOCIATION TO PLAINTIFF'S**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

III.  **PREAMBLE**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the general and specific objections presented, the Dorchester Owners' Association (hereinafter "DOA"), by its counsel, hereby responds to the Plaintiff's First Set of Requests for Production of Documents. Discovery has barely commenced. The Plaintiff presented evasive and inadequate responses to the discovery requests that the DOA presented to Plaintiff. Intervenor-Plaintiff, Louise Hamburg, has not provided even one response to the DOA's discovery requests, and discovery will proceed over the next several months. Accordingly, the DOA reserves the right to assert additional objections and provide additional responses as it receives appropriate and complete discovery responses from Plaintiff, and Intervenor-Plaintiff, and as discovery proceeds.

IV.    **GENERAL OBJECTIONS**

These general objections apply to each Request as though restated in full in the DOA's response to each.

1.    The DOA objects to any and all Requests for Production to the extent that they seek information protected from disclosure by the attorney/client, attorney work product or any other applicable privilege.  Any inadvertent disclosure of work product or attorney-client communications shall not constitute the waiver of any attorney/client, attorney work product or any other applicable privilege.

2.    The DOA objects to any and all Requests for Production to the extent that they seek disclosure of beliefs, mental impressions, conclusions, legal research and/or legal theories of counsel.  Any inadvertent disclosure of work product shall not constitute the waiver of any work product protection.

3.    The DOA objects to any and all Requests for Production to the extent that they seek information of a confidential and proprietary nature on the grounds that such information, if it is otherwise discoverable, should not be provided unless and until an appropriate order protecting the confidentiality of such information has been entered

4.    The DOA objects to any and all Requests for Production requesting identification of documents "concerning," "related to" or "relating to" a particular fact, action, discussion, allegation, etc. as being non-specific, incapable of answer, vague, undefined, subjective, overly broad and unduly burdensome.

5.    The DOA objects to any and all Requests for Production which ask for information that is not within the DOA's knowledge, information, possession or control.

6.    The DOA objects to any and all Requests for Production to the extent that they

seek irrelevant information, proprietary or confidential information, or information which is overly broad or unduly burdensome or which is not properly limited in scope or which is not reasonably calculated to lead to the discovery of admissible evidence.

7. The DOA objects to any and all Requests for Production which are vague, ambiguous or otherwise incomprehensible.

8. The DOA objects to any and all Requests for Production to the extent that they seek legal conclusions.

9. The DOA reserves the right to supplement, amend, correct, or clarify its answers and objections to these Requests for Production as Plaintiff and Intervenor-Plaintiff respond properly to the DOA's discovery requests and as circumstances warrant.

10. The DOA objects to the "Instructions" preceding the Requests for Production to the extent that they purport to impose obligations upon the DOA that go beyond, or are inconsistent with, or not required by, the Federal Rules of Civil Procedure. The DOA will respond in conformance with the Federal Rules of Civil Procedure and ignore other contrary instructions.

11. The DOA objects to the "Definitions" preceding the Requests for Production to the extent that they offer improper, inaccurate, or incorrect descriptions of the terms they seek to define, or seek to require the DOA to provide or identify information or documents beyond the scope of what is required by the Federal Rules of Civil Procedure. The DOA will respond in conformance with the Federal Rules of Civil Procedure and ignore other contrary instructions.

12. The DOA objects to any and all Requests for Production to the extent they seek information that is not in the possession, custody or control of the DOA.

13. The DOA objects to any and all Requests for Production to the extent they seek

confidential or proprietary information, business information, competitively sensitive information, the financial information of the DOA, the personal information of any DOA owners, residents, employees or other individuals, or information otherwise protected, disclosure of which would be harmful to the DOA's business interests or would invade the DOA's privacy or the privacy rights of the DOA's management, employees, owners, residents, customers or other persons or entities to which the DOA owes any duty.

14.     The DOA objects to any and all Requests for Production to the extent that they seek, or purport to require, the identification, review, or access of electronically stored information that the DOA does not own or control, was created by the DOA's owners, residents, employees, is not reasonably accessible because of undue cost or burden, or that is not proportional to the needs of this case.

15.     Discovery is ongoing, and the DOA reserves the right to amend and/or supplement its responses in accordance with the Federal Rules of Civil Procedure, local rules, Judge Baylson's procedures, and/or the Court's scheduling orders.

16.     The DOA objects to any and all Requests for Production to the extent that they seek documents and/or information already in the possession of Plaintiff.

17.     The DOA objects to any and all Requests for Production to the extent that they do not identify a time frame or identify the overbroad time frame of January 1, 2009 to present, as such requests are not proportional to the needs of Plaintiff's case. The DOA will limit its response to the time relevant to Plaintiff's Complaint: from Louise Hamburg's December 25, 2017 email to present.

18.     All responses are made subject to these General Objections.  The fact that the DOA may have supplied information in response to any particular Request does not constitute an

admission or acknowledgment that the information sought is relevant or admissible at trial.  By

supplying any information, the DOA does not intend to, and does not, waive any of its general or

specific objections to any and all Requests for Production.  The DOA reserves the right to

supplement, amend, correct, or clarify their responses and objections to the Requests for

Production.

## III.  <u>CONDITIONS</u>

19.     The DOA's responses are made without waiving or intending to waive, but on the

contrary, intending to preserve and preserving (a) all objections as to confidentiality, relevancy,

materiality, privilege or admissibility as evidence for any purpose in subsequent proceedings or

the trial of this or any other actions; (b) the right to object to the use of any information which

may be provided, or the subject matter thereof, in subsequent proceedings or the trial of this or

any other action on any other ground; (c) the right to object on any ground at any time to further

discovery proceedings involving or relating to the subject matter of the interrogatories and

document requests; (d) the right at any time to revise, correct, supplement, clarify or amend this

response.

20.     Documents which the DOA already has provided to Plaintiff or which are already

in Plaintiff's or its counsel's possession, or for any other reason, will not be produced a second

time.

## IV.  <u>RESPONSES</u>

### REQUEST 1

The DOA incorporates the General Objections above, and also objects to this Request on the
grounds that it is vague, overly broad, unduly burdensome and seeks information that is not
relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's
Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg
beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, the DOA's document production includes The Dorchester Declaration of Condominium and its Rules and Regulations for Residents. The DOA has also produced relevant polices governing requests for accommodations involving assistance animals.

**REQUEST 2**

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, the DOA has produced relevant polices governing requests for accommodations involving assistance animals.

**REQUEST 3**

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, the DOA has produced relevant polices governing requests for accommodations involving assistance animals, as well as the minutes the Council meetings in which those polices were adopted.

**REQUEST 4**

See Responses and Objections to Request No. 3, which are incorporated by reference in their entirety.

**REQUEST 5**

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

**REQUEST 6**

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not

relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, correspondence between Louise Hamburg, DOA management and DOA Council resulting from Ms. Hamburg's December 25, 2017 email either already has been produced, is in the possession of, or is equally available to Plaintiff and/or Plaintiff-Intervenor.

### REQUEST 7

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, correspondence between Louise Hamburg, DOA management and DOA Council resulting from Ms. Hamburg's December 25, 2017 email either already has been produced, is in the possession of, or is equally available to Plaintiff and/or Plaintiff-Intervenor.

### REQUEST 8

See Responses and Objections to Request Nos. 6 & 7, which are incorporated by reference in their entirety.

### REQUEST 9

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

By way of further objection, neither Bernard nor Cynthia Halpern are parties to the matter and have not authorized the dissemination of their documents, file(s), communications or the like.

Subject to and without waiver of the foregoing objections, correspondence from DOA management and DOA Council to Bernard and Cynthia Halpern addressing their request for a reasonable accommodation either already has been produced, is in the possession of or is equally available to Plaintiff, and/or may be obtained directly from the Halperns.

### REQUEST 10

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not

relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, DOA Council members and the DOA General Manager routinely attend Council meetings in which fair housing questions are addressed by counsel. The substance of those communications are protected by the attorney-client and work product privileges.

### REQUEST 11

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Council members and the General Manager routinely attend Council meetings in which fair housing questions are addressed by counsel. The substance of those communications are protected by the attorney-client and work product privileges.

### REQUEST 12

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

### REQUEST 13

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

### REQUEST 14

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

By way of further objection, Plaintiff has already objected to a similar request from the DOA, refusing to provide any information whatsoever about similar litigation in which Plaintiff is involved.

## REQUEST 15

The DOA incorporates the General Objections above, and also objects to this Request on the grounds that it is vague, overly broad, unduly burdensome and seeks information that is not relevant to the parties' claims or defenses in this case. Moreover, the temporal scope of Plaintiff's Request is unlimited, while Plaintiff's complaint alleges discrimination towards Louise Hamburg beginning in 2018. Accordingly, the request is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, See the DOA's document production, including the DOA's file for Louise Hamburg. Discovery is in its infancy, and the DOA has not yet determined what documents it intends to use at trial. The DOA reserves the right to rely upon any documents produced by any party or third-party. The DOA reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure, local rule, Judge Baylson's procedures and/or rule of court.

## REQUEST 16

See CNA Policy.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**


By: _/s/ Paul C. Troy_____
      PAUL C. TROY, ESQUIRE
      THOMAS J. ZIMMERMAN, ESQUIRE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Objections and Responses of the

Dorchester Owners' Association to Plaintiffs' First Set of Requests for Production of Documents was

served upon the following counsel of record via electronic mail this 2nd day of October, 2020:


Mazen M. Basrawi, Esquire
Housing & Civil Enforcement
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M St., NE/ 6.1134
Washington, DC 20530
<u>mazen.basrawi@usdoj.gov</u>
Attorney for United States


Margaret Coleman, Esquire
The Law Offices of Timothy P. O'Brien
Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, Pennsylvania 15222
<u>msc@obrienlawpgh.com</u>
Attorney for the Plaintiff-Intervenor


/s/ Thomas J. Zimmerman
Thomas J. Zimmerman, Esquire

**Exhibit E**



SSM:AKS:MMB:ALB
DJ 175-62-410

| | |
|---|---|
| *U.S. Mail:* | *950 Pennsylvania Avenue, NW - 4CON.* |
| | *Washington, DC 20530* |
| *Overnight:* | *150 M Street, NE/6.1134* |
| | *Washington, DC 20530* |
| *Telephone:* | *(202) 514-4713* |
| *Facsimile:* | *(202) 514-1116* |

October 28, 2020

<u>By Email</u>

Paul Troy
Thomas Zimmerman
Kane, Pugh, Knoell, Troy & Krammer LLP
510 Swede St.
Norristown, PA 19401
tzimmerman@kanepugh.com
ptroy@kanepugh.com

Re: *United States and Louise Hamburg v. The Dorchester Owners' Association,*
*E.D. Pa., 20-1396*

Dear Messrs. Troy and Zimmerman,

We have reviewed Defendant Dorchester Owners Association's (hereinafter "Defendant" or "DOA") Responses, produced on October 2, 2020, to the United States' First Set of Interrogatories and Requests for Production, served on September 2, 2020. Following our review, we have multiple concerns regarding the Responses. Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 26.1, we are writing to you in an effort to resolve the following discovery issues without court intervention.

As many of your objections and incomplete Responses derive from a misunderstanding of or unfamiliarity with the United States' Complaint, I first redirect your attention to ECF 1, paragraphs 10-23, wherein the United States describes Fair Housing Act violations that are the result of the DOA's assistance animal policies, starting in 2009 and continuing to the present. Paragraphs 53-56 of the United States' Complaint state that the DOA's conduct constitutes a "pattern or practice" and a "denial of rights to a group of persons" in violation of 42 U.S.C. § 3614(a), and, accordingly, the United States' Prayer for Relief includes in paragraph 5, "an award of monetary damages to … every [] person injured by the Defendant's discriminatory practices." *See* ECF 1. The Attorney General has authority under 42 U.S.C. §§ 3614(a) and 3612(o) to seek relief for Louise Hamburg, the initial HUD complainant. He also has been given authority under 42 U.S.C. § 3614 to seek relief for other persons whose rights have been violated by the DOA's actions. For these reasons, the Interrogatories and Requests for Documents propounded by the United States concerning the DOA's reasonable accommodation policies, assistance animal policies, Fair Housing Act ("FHA") trainings, manuals, and other instructive

documents, records of reasonable accommodation requests, and records of complaints concerning housing discrimination made to or against the DOA are not overly broad or irrelevant to the parties' claims and defenses in this case, as you contend; rather, their complete and accurate response is necessary for the United States to determine the extent of the DOA's pattern or practice of Fair Housing Act violations and for the identification of other aggrieved persons. Furthermore, the temporal scope of these requests, from 2009 to the present, is appropriate as it is the year in which the DOA first enacted its Assistance Animal Policy, according to the documents DOA provided to HUD, and which the DOA now admits were its policies (*see* DOA's Responses to RFP #1 and #2), and the United States is entitled to identify other aggrieved persons whose rights were violated in the DOA's enforcement of this Policy.

A basic principle of discovery is that the parties are required to "show their hands" to allow for cases to be decided on the merits rather than surprise. *See Mason v. George*, No. 1:12-CV-159 WLS, 2013 WL 5657693, at *1 (M.D. Ga. 2013) (noting that the rules of discovery prohibit a party from "hiding the ball" and that explaining that "[w]hen a party thumbs its nose at the discovery process . . . Federal Rule of Civil Procedure 37 permits the Court to impose an appropriate sanction."). Rather than responding to the discovery requests with this principle in mind, Defendants appear to have largely taken a delay and evade strategy.

For example, the DOA has not yet produced documents and has not yet provided a date by which it will produce documents. This is unacceptable and not in compliance with Federal Rule of Civil Procedure 34(b)(2)(B), which requires production to "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." The DOA's failure to produce responsive documents in a timely manner or provide a reasonable timeline for production greatly hinders the United States' ability to prosecute this lawsuit. Please produce all responsive documents in Defendant's possession, custody, or control by November 9, 2020. We also request that Defendant provide supplemental production responses indicating that the production has been fully completed, including whether any documents have been withheld pursuant to Rule 34(b)(2)(C), and further identifying, by bates label, the documents responsive to each request.

In addition to the objections above, the United States has identified seventeen categories of specific concern, which are set forth below. As to each of these categories, the United States reminds Defendant that the scope of discovery is governed by Federal Rule of Civil Procedure 26, which provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1).

The categories of information identified below are clearly relevant to this case. But even if their relevance were less clear, "[d]iscovery requests should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action, and relevance for discovery purposes is not limited to issues framed by the pleadings, but should be measured by the general relevance to the subject matter." *In re Bell Atlantic Corp. Securities Litigation*, No. 91-0514, WL 514408, at *2 (E.D. Pa. Dec. 13, 1993). Further, "the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *see also Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) ("To voice a successful objection to an interrogatory, [a party] cannot simply intone this familiar litany [objecting generally to an interrogatory as 'overly broad, burdensome, oppressive and irrelevant']."). If you contend that the information requested is not relevant, please provide justification, along with any supporting case law, no later than November 9, 2020.

Finally, as a preliminary matter, the Dorchester asserts improper objections that the documents or information sought "are not reasonably calculated to lead to the discovery of admissible evidence." The reasonably calculated standard has not been used in the Federal Rules since 2015. *See In re Ex Parte Global Energy Horizons Corp.*, 647 Fed. App'x. 83, 86 n.9 (3d Cir. 2016); *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 821 (W.D. Pa. 2016); *AgroFresh Inc. v. Essentiv LLC*, No. 16-662, 2018 WL 9578196, at *2 n.2 (D. Del. Dec. 11, 2018).

## 1.      The DOA's General Objections.

In its Responses to both the United States' Interrogatories and Requests for Production, the DOA incorporates eighteen General Objections, among which are included Objections to the United States' "Instructions" for Production and "Definitions." Without providing specifics, the DOA claims that the United States' "Instructions" potentially "purport to impose obligations upon the DOA that go beyond, or are inconsistent with, or not required by, the Federal Rules of Civil Procedure." Similarly, the DOA provides no specifics concerning which of the United States' "Definitions" "offer improper, inaccurate, or incorrect descriptions of the terms they seek to define, or seek to require the DOA to provide or identify information or documents beyond the scope of what is required by the Federal Rules of Civil Procedure." As a result of these vague objections, the United States is unable to clarify its position in response.

Additionally, the DOA's General Objection #8 to the United States' Request for Production is improper. Requests for production cannot seek legal conclusions because they seek documents. *See* Fed. R. Civ. Pro. 26(b).

Finally, "general" objections are judicially disfavored. To the extent that a specific request is objected to, the specific objections should be set forth in response to the request. "[R]elevancy, and to a lesser extent burdensomeness, constitute the principal inquiry in ruling upon objections to interrogatories." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D.

Pa. 1980); *see also Superior Coal Co. v. Ruhrkohle, A. G.*, 83 F.R.D. 414, 422 (E.D. Pa. 1979). General objections are, by their nature, at odds with this endeavor.

2. **Claims that certain common words and phrases are "vague, confusing, unintelligible, unnecessarily subjective, non-specific and incapable of interpretation."**

In the DOA's General Objection #4 and Objections to Interrogatories #3, #5, #7, #9, #13, and #16, the DOA has claimed that the United States' use of the words "supervisory duties," "participated," "participate" "concerning," "related to," and "relating to" prevents it from answering various interrogatories because such terms are "vague, confusing, unintelligible, unnecessarily subjective, non-specific and incapable of interpretation." Interestingly, the DOA itself uses "relating to" in its own Interrogatories and Requests for Production. To suggest that these common parlance terms are so unfamiliar to the DOA to result in the Defendant's incapacity to interpret their plain meaning stretches credulity to an absurd degree. In fact, parties have an "obligation to construe . . . discovery requests in a reasonable manner." *Cache LaPoudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618 (D. Colo. 2007); *see also King-Hardy v. Bloomfield Board of Education*, No. Civ.3:01CV979 (PCD), 2002 WL 32506294, at *5 (D. Conn. 2002) (responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . .") (internal quotations omitted).

Similarly, in the DOA's objection to the United States' Interrogatory #1, the DOA objects to the use of the word "believe," and comments that "[u]nlike people, an Association does not have the faculty to 'believe,' or the facility to formulate beliefs as suggested by this Interrogatory." Again, the statement that the DOA is so unfamiliar with the idea of a collective belief held by an association of individuals—for example, as commonly referenced in mission statements, core values and beliefs, and in correspondence directed to or from an organization in which a single voice speaks for the collective in regards to decision-making and knowledge—is not possibly believable by any person—individual or otherwise. However, if the DOA would prefer to substitute a synonym for "believe," such as "consider" or "deem," that it understands to be better suited to describing a belief or position collectively held by an organization, the DOA may do so.

3. **DOA's vague answers.**

In several of its Responses, the DOA provides only a vague answer to the United States' discovery requests, specifically, in its responses to Interrogatories #2, #3, #5, #7, #9, #10, #11, and #16. For instance, instead of providing the names of specific individuals who were involved in the various DOA decision-making actions considered in these Interrogatories, the DOA's Responses refer to "DOA Council members" and "DOA management." The goal of discovery is to narrow the issues and eliminate surprises. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (stating that "civil trials in the federal courts no longer need be carried on in the dark");

*Hernandez v. George*, 793 F.2d 264, 267 (10th Cir. 1986) (noting that the goal of discovery is to eliminate surprises). A number of cases in the Third Circuit hold that interrogatory responses may not merely generally reference previous discovery, but must "be complete in and of themselves." *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992) (citing 4 J. Moore, J. Lucas & G. Grotheer, Jr., Moore's Federal Practice (2d ed. 1989) ¶ 33.25[1]); *see also DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 787 (3d Cir. 1974) (holding that plaintiff's evasive and nonresponsive interrogatory responses, among them, "This question does not seem to be any business of the defendant's," were "highly inappropriate" and inadequate). In regards to providing specific names and addresses of individuals who are potential witnesses, "the interrogating party is entitled to the names and addresses of the persons known to the interrogated party as having knowledge of the subject matter of the interrogatory." *Lunn v. United Aircraft Corp.*, 25 F.R.D. 186, 188 (D. Del. 1960).

Accordingly, Defendant must respond with specificity to the United States' discovery requests.

**4.      Failure to identify responsive documents.**

The Defendant fails to specify which documents are responsive to discovery requests, specifically those responsive to Interrogatories #4, #10, #11, and #12 and Requests for Production #1, #2, #3, #4, #6, #7, #8, #9, and #16. Federal Rule of Civil Procedure 33(d)(1) allows parties to respond to interrogatories by producing business records, but only if the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Similarly, in responding to production requests, a party is required to either produce the documents as kept in the usual course of business or must organize and label them to correspond to the requests. Fed. R. Civ. Pro. 34(b)(2)(E)(i). The Defendant references, generally, documents in the Plaintiff's possession without further identification. The Defendant's responses do not enable the United States to identify which documents are responsive to the discovery requests. Therefore, please indicate, with appropriate specificity (*i.e.*, Bates labels), the documents that are responsive to the aforementioned discovery requests, whether or not they have been previously produced to HUD. The Defendant may use the bates labeling provided in the United States' production.

**5.      Failure to state whether Defendant is withholding or producing documents.**

The DOA's Responses fail to state whether it is withholding or producing documents in response to the United States' Requests for Production in violation of Federal Rule of Civil Procedure 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). The DOA's Responses to the United States' Request for Production #10 and #11 are thus improper because the DOA does not indicate whether it is withholding or producing documents. Federal Rule of Civil Procedure 26 requires that "[w]hen a party withholds information otherwise discoverable by claiming that the information is

privileged or subject to protection as trial-preparation material, the party must expressly make the claim[] and describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. Pro. 26(b)(5)(A). Further, under the Notes of the Advisory Committee to the 1993 Amendment to Rule 26, "A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. Pro. 26(b)(5) advisory committee's note to 1933 amendment.

6.      **Failure to provide a privilege log.**

The DOA has failed to provide a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5)(A) for objections to requests based on a claim of privilege, attorney-work product, or any other basis.

7.      **Claims that the DOA's knowledge of reasonable accommodation policies, approvals, and denials has no bearing on the DOA's violation of the Fair Housing Act.**

At several points, the DOA attempts to incorporate the United States' objection that its knowledge at a specific time has no bearing on whether the DOA violated the Fair Housing Act into its own objections to answering Interrogatories—specifically in its Responses to Interrogatories #1, #6, #10, and #14. This objection is improper and the reasoning is misapplied in the DOA's Responses, as what the DOA knew or did not know at any particular point is directly and obviously relevant to whether it unlawfully denied reasonable accommodations. Knowledge of a reasonable accommodation request and of a requester's disability is a necessary component that the United States must determine in its prosecution of Fair Housing Act violations and in its evaluation of the Defendant's actions. For example, if a housing provider had no knowledge of a reasonable accommodation request, that could constitute a defense against claims of denial of rights to a person with a disability. Moreover, as the DOA's Assistance Animal Policies themselves violate the Fair Housing Act, how these policies were enforced is critical to a fundamental element of the United States' pattern or practice and denial of rights claims. In contrast, what the United States knew at any given point in its investigation is irrelevant to any claim or defense, as the United States is the plaintiff, not the defendant in this action.

8.      **Claims that information about the DOA's organization, management, and past and current employees is irrelevant.**

The DOA has refused to provide complete information regarding its current or former employees, agents, council members, or other persons who participated in the operation, management, or maintenance of The Dorchester as propounded in the United States' Interrogatories #1, #2, and #3. These discovery requests seek to identify individuals who

participated in the operation, property management, or maintenance of The Dorchester, including receptionists, doormen, records clerks or secretaries, handy persons, maintenance persons, landscapers, persons who may initiate or participate in disciplinary proceedings or issue violation notices, and persons who collected condominium fees and fines, in addition to DOA board members and Council members. Because these individuals may have information related to the United States' claims, and/or may be witnesses in this action, the Defendant must fully respond to these interrogatories.

**9.     Claims that DOA Council minutes, policies, trainings, etc. are protected by the attorney work-product and attorney client doctrines and privileges.**

The DOA invokes the attorney work-product doctrine and attorney-client privilege in many of its Responses, namely, in its Responses to Interrogatories #2, #5, #6, #11, #14, #15, #17, and #18 and to Requests for Production #10 and #11. As a result, the DOA refuses to provide complete information or documents relating to: the DOA's organizational structure and employees, the DOA individuals involved in the drafting and adoption of DOA's reasonable accommodation policies, Council meeting minutes related to the drafting and adoption of DOA's reasonable accommodation policies, reasonable accommodation requests made to the DOA, FHA trainings taken by DOA council members and employees, other manuals or documents concerning the FHA that were provided to DOA employees or personnel, housing discrimination complaints made to or against the DOA, the DOA's financial information, and investigations or examinations conducted by the DOA related to this lawsuit.

"[The attorney-client] privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007); *see also In re Berks Behavioral Health LLC*, 500 B.R. 711, 718 (Bankr. E.D. Pa. 2013). The attorney-client privilege allows a party to withhold a communication from disclosure only when it meets all of the following elements: "it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Communications Corp.*, 493 F.3d at 359 (internal quotations omitted). The party asserting the privilege bears the burden of establishing the requisite elements. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012); *see also TC Technology LLC v. Sprint Corporation*, No. 16-cv-153-RGA, 2018 WL 6584122, at *2 (D. Del. Dec. 13, 2018). Additionally, the Third Circuit has held that, "[t]he privilege does not apply merely because a statement was uttered by or to an attorney (or an attorney's agent). Nor does it attach simply because a statement conveys advice that is legal in nature." *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 (D.N.J. 2001) (citing *Westinghouse Elec. Corp.*, 951 F.2d 1414, 1423–24 (3d Cir. 1991)). Rather, "the privilege extends to '*only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Id.*; *see also IQVIA, Inc. v. Veeva Systems, Inc.*, No. 2:17-CV-00177-CCC-MF, 2019 WL 2083305, at *4 (D.N.J. May 13, 2019).

It is unclear if the DOA is using the mere presence of an attorney or attorneys who serve as Council members at Council meetings and trainings as the basis for its invocation of these privileges. An attorney who is acting in his capacity as a Council member rather than as an

attorney giving legal advice is not subject to the attorney client privilege, and "[a]n attorney's 'mere attendance' at a meeting cannot protect the notes produced from that meeting where they would 'otherwise be discoverable . . . but for their creation in the presence of a lawyer.'" *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 479 (E.D. Pa. 2005) (quoting *Martin Marietta Corp. v. Fuller Co., Misc.*, No. 86–0151, 1986 WL 13308, at *2 (E.D. Pa. Nov. 21, 1986)). "It is well-settled that 'the mere fact that an attorney attended a meeting does not render everything said or done at that meeting privileged.'" *Cottillion v. United Refining Co.*, 279 F.R.D. 290, 311 (W.D. Pa. 2011) (quoting *Pownell v. Credo Petroleum Corp.*, No. 09–cv–01540–WYD–KLM, 2011 WL 1045418, *3 (D. Colo. 2011)); *Brinckerhoff v. Town of Paradise*, No. 10-cv-0023, 2011 WL 2926936, at *3 (E.D. Cal. July 15, 2011) ("The fact that confidential communications within the privilege may have been made at the board meetings does not cloak the entire proceeding in secrecy."). Instead, the communication would be privileged only if "the communication [was] made in confidence for the purpose of obtaining legal advice from the lawyer." *IQVIA, Inc.*, 2019 WL 2083305, at *4 (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)); *see also Cottillion*, 279 F.R.D. at 311.

But even for those meetings when Defendant's actual attorney(s) are present, this privilege would not insulate the entire meeting. "Privilege is restricted to those instances where employees secure legal, not business, advice or services, or where in-house counsel provides legal advice or legal services to corporate personnel." *SmithKline Beecham Corp.*, 232 F.R.D. at 479. Privilege applies where a "corporation . . . clearly demonstrates that the communication in question was made for the express purpose of securing legal not business advice." *Kramer v. Raymond Corp.*, Civ. No. 90–5026, 1992 WL 122856, at *1 (E.D. Pa. May 26, 1992); *see also In re Ford Motor Co.*, 110 F.3d 954, 956 (3d Cir. 1997) ("[M]inutes of the meeting reflect that the recorded communications were for the purpose of obtaining legal advice and hence are protected by the attorney-client privilege."). The privilege does not apply to "discussions among [council] members or the opinions, impressions, and conclusion of [council] members based upon events occurring during the closed session." *Hinsdale v. City of Liberal, Kan.*, 961 F.Supp. 1490, 1494 (D. Kan. 1997); *see also Cottillion*, 279 F.R.D. at 311. Discussions held by the Council at meetings open to DOA members and the public are not privileged, and, while the attorney-client privilege might apply in a limited way to some of the discussions held in the DOA's closed council meetings, it does not provide a blanket privilege to prevent the DOA from producing these minutes. To the extent that certain minutes contain legal advice or other communications that relate to the acquisition or rendition of legal advice, the Defendant should simply redact this information and provide a privilege log. However, the United States should have access to all remaining information in the relevant Council meeting minutes, including the mental impressions, opinions, and conclusions of Council members. *See Dombrowski v. Bell Atlantic Corp.*, 128 F. Supp. 2d 216, 218 (E.D. Pa. 2000) ("[T]he attorney-client privilege does not protect a party from disclosing underlying facts. Rather, it simply protects communications between a party and the party's attorney.") (internal quotations omitted).

For attorney work product to apply, the documents must: "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotations omitted); *see also Pennsylvania Dept. of Public Welfare v. U.S.*, No. CIVA 05-1285, 2006 WL 3792628, at *22-23 (W.D. Pa. Dec. 21, 2006) ("The attorney work product privilege may only be

invoked to exempt those documents prepared in anticipation of litigation, and not every written document generated by an attorney.") (internal quotations omitted). The work-product doctrine "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)). The Defendant has not set forth how these minutes, policies, and training materials were "prepared in anticipation of litigation," and it bears the burden of establishing that these documents are privileged. *See Pennsylvania Dept. of Public* Welfare, 2006 WL 3792628, at *23. It would defy credulity that every meeting in which a request for a reasonable accommodation was discussed was done in anticipation of litigation, let alone be the work product of an attorney acting to prepare for such litigation.

10.  **Claims that the DOA is unable to provide confidential information about DOA employees and residents because of federal and state privacy laws.**

Among its General Objections, the DOA objects to Interrogatories and Requests for Production "to the extent they seek confidential or proprietary information, business information, competitively sensitive information, the financial information of the DOA, the personal information of any DOA owners, residents, employees or other individuals, or information otherwise protected, disclosure of which would be harmful to the DOA's business interests or would invade the DOA's privacy or the privacy rights of the DOA's management, employees, owners, residents, customers or other persons or entities to which the DOA owes any duty." Specifically, in its Response to Interrogatory #6, the DOA states "if any persons 'have made requests for reasonable accommodations to any of DOA's policies, whether it be caused by their own disability or on behalf of another person with a disability, including but not limited to, requests for assistance animals,' federal, state and other laws protect their identity from disclosure, as the Plaintiff repeatedly has stated in its responses to the DOA's Interrogatories (Set I and Set II) and the DOA's Requests for Production of Documents." It appears that the DOA is here referring to the United States' invocation of the common interest in litigation privilege, which protects communications between the United States and aggrieved persons. (This privilege is discussed further in the United States' October 14, 2020, Response Letter to the DOA). However, this privilege does not apply to the DOA in this instance, and the privacy requirements of the cited "federal, state, and other laws" are met in this litigation by the Protective Order. *See* ECF 21. The DOA is welcome to designate any responsive document with sensitive financial or other information as confidential pursuant to that order, but it may not withhold documents or information on that basis.

11.  **The DOA's misreading as duplicative of Interrogatories #4 and #12 and Interrogatories #5 and #13.**

The DOA incorrectly reads the United States' Interrogatories #12 and #13 as duplicative of #4 and #5, respectively. In fact, Interrogatory #4 asks the DOA to provide information regarding its policies "concerning reasonable accommodations for persons with disabilities," which may include reasonable accommodations for assistance animals, and Interrogatory #5 asks

for the identification of individuals involved in the drafting and adoption of any such policies. Conversely, Interrogatory #12 asks the DOA to provide information regarding its policies "relating to pets, service animals, assistance animals, or any animals at the Dorchester," and Interrogatory #13 asks for the identification of individuals involved in the drafting and adoption of any such policies. While there may be overlap in the DOA's responses to these two sets of related interrogatories, there is a distinction between policies regarding reasonable accommodations at the Dorchester, which may or may not include assistance animals, and policies regarding animals at the Dorchester, which may or may not include assistance animals.

## 12. The DOA's misreading as duplicative of Interrogatories #8 and #9.

The DOA inappropriately responds to the United States' Interrogatory #9 by referring to its Response to Interrogatory #8. This duplication is inappropriate as these Interrogatories seek quite different information: why the DOA denied Ms. Hamburg's reasonable accommodation request (#8) and the individuals who participated in the denial (#9). The DOA's Response to Interrogatory #8 only mentions by name Ms. Yonekawa and Attorney Horvitz, the latter of which was already specifically named in the Interrogatories. Please respond to Interrogatory #9 with the names of all individuals who were involved in the denial of Ms. Hamburg's reasonable accommodation request.

## 13. Clarification needed in the DOA's Responses to Interrogatories #10 and #11.

The United States' Interrogatories #10 and #11 request that the DOA identify any guidance or policy regarding compliance with the Fair Housing Act and any and all trainings concerning the Fair Housing Act taken by DOA Council members or members of the board of directors, or DOA employees, respectively. The DOA's Responses to these Interrogatories fails to adequately address these discovery requests. Instead, they state that "the DOA Council seeks advice of counsel on requests for accommodation and/or other fair housing questions" and reference, generally, the DOA's Assistance Animal Policies. Please state whether the documents described in Interrogatory #10 exist in the DOA's possession, custody, or control. Please also state whether any DOA employees have or have not taken or attended trainings as described in Interrogatory #11.

## 14. The United States' Request for Production #9.

The DOA's Response to the United States' Request for Production #9 references "correspondence from DOA management and DOA Council to Bernard and Cynthia Halpern addressing their request for a reasonable accommodation either already has been produced, is in the possession of or is equally available to Plaintiff, and/or may be obtained directly from the Halperns." This Response is improper as the Request requires that the DOA produce documents responsive to this request within the DOA's possession, custody, or control. *See* Fed. R. Civ. Pro. 34(a)(1). To the extent that these include documents that the United States has included in its

production, it need not produce such documents (though it must identify them as responsive), but it must produce all other responsive documents within its possession, custody, or control.

15.     **The DOA's refusal to provide information about other complaints of discrimination against the DOA.**

The DOA refuses to identify and provide all complaints made against it relating to housing discrimination (Interrogatory #14 and Request for Production #14). The DOA's other objections to these requests, including attorney work-product, attorney-client privilege, the request being overly broad and burdensome, and especially its objection that "the information sought has no bearing on whether the DOA in this case has violated the Fair Housing Act by improperly denying reasonable accommodations for assistance animals" are incorrectly applied. As discussed, *supra*, the United States' pattern or practice authority and claims against the DOA render these requests both relevant and necessary in order for the United States to determine whether the DOA has committed other violations of the FHA and whether other aggrieved persons to this litigation exist.

16.     **Claim that some ESI production is inaccessible and not proportional to the needs of this case.**

In its General Objections, the DOA "objects to any and all Requests for Production to the extent that they seek, or purport to require, the identification, review, or access of electronically stored information that the DOA does not own or control, was created by the DOA's owners, residents, employees, is not reasonably accessible because of undue cost or burden, or that is not proportional to the needs of this case." This statement gives no indication of which documents the DOA believes to be outside of its ownership or control. The United States contends that documents created by DOA council members and employees in the normal course of business must be produced. The DOA's suggestions that at least some of these documents would be too costly or burdensome to acquire are too nonspecific to allow for the United States to address these concerns.

As one court explained, "Discovery always entails some burden or expense." *Clinton v. Cal. Dept. of Corr.*, No. 05-cv-1600, 2008 WL 5068586, at *1 (E.D. Cal. Nov. 25, 2008). *See also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (allegations of injury must be substantiated by "specific examples or articulated reasoning"); *Ross v. Abercrombie & Fitch Co.*, 2010 WL 1957802, at *3 (S.D. Ohio May 14, 2010) ("The party claiming that discovery is burdensome does have an obligation to make that claim with . . . specific, articulable facts and not merely speculative or conclusory statements") (internal citations omitted); *Hines v. City of Philadelphia*, 1994 WL 376914 at *2 (E.D. Pa. 1994) ("particularized showing of 'significant' harm" required); *Joseph v. Harris Corp.*, 677 F.2d 985, 991 (3rd Cir. 1980). Accordingly, the DOA is required to produce the ESI requested by the United States or to articulate clearly and specifically why the DOA is unable to do so.

**17.**      **Refusal to provide its financial information.**

The DOA has refused to provide financial information as requested in the United States' Interrogatory #15. This request seeks information regarding the DOA's financial status and net worth, including all assets and liabilities. The DOA objects, among other reasons, on the basis of attorney-client privilege, attorney work-product, a claim that such a request is overly burdensome and disproportional to the needs of the case, and is premature. Financial information is not privileged. *See* Fed. R. Civ. Pro. 26(b)(1). The Court in this matter has already ruled that punitive damages may be sought for aggrieved persons. *See* ECF 23. The United States is entitled to this information, and the information is relevant to the penalties and damages that may be assessed in this case. *See Long v. H.D.J. Co., Inc.,* 2004 WL 1427144, at *1 (E.D. Pa. June 14, 2004) ("Defendant's financial information is clearly discoverable in light of Plaintiff's punitive damages claim."). As the financial information sought is relevant on its face, the Defendant has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26. The Defendant has not and cannot meet that burden. Therefore, the Defendant must respond to this discovery request.

Please provide the information requested above no later than November 9, 2020. If you are unwilling or unable to do so, please contact us immediately so that we can schedule a teleconference promptly. Please let us know which days and times you are available.

Sincerely,

Sameena Shina Majeed
Chief

By:            */s/ Mazen M. Basrawi*

Mazen M. Basrawi
Trial Attorney
Housing and Civil Enforcement Section

cc:      Margaret S. Coleman, Esq. (via email)

**Exhibit F**

# KANE, PUGH, KNOELL, TROY & KRAMER LLP

## ATTORNEYS AT LAW

William H. Pugh, V+
George H. Knoell, III
Paul C. Troy

Robert Connell Pugh
Justin A. Bayer
Melissa K. Nagata*

Donald J. Belfie, Jr.
Kara H. Dougherty
Kristy M. Castagna*
Sean R. Morrow*
Elaine M. Moyer
Amy M. Kirkpatrick*
Kathryn M. Brady*
Andrew M. Lamberton*
Peter B. Rogers*
Kathleen M. Klemm*
Gina Kiley*
John T. Idell*
James G. Schu, Jr.*
Pamela L. Cunningham*
Thomas J. Zimmerman*
Jessica M. Keough*
Kevin M. Krauss*+^
David O. McColloch
Rachel L. Nave*
Elizabeth Schmidt-Jerdon
Sean M. McBratnie
Samuel Park
Laurel D. Little
Jennifer L. Glauser

510 Swede Street
Norristown, PA 19401 ◆
610.275.2000
Andrew J. Kramer

1650 Market Street, Suite 3618
Philadelphia, PA 19103
267.675.7023
Fax: 610.275.2018

**www.kanepugh.com**
**Please Reply to Norristown**

William H. Pugh, IV
*Senior Counsel*

Edward F. Kane
M. Cathlene Driscoll
*Counsel to the Firm*

✦ Member New York Bar also
* Member new Jersey Bar also
^Member District of Columbia Bar also

November 9, 2020

*ptroy@kanepugh.com*
*tzimmerman@kanepugh.com*

VIA EMAIL to *mazen.basrawi@usdoj.gov*
Mazen M. Basrawi, Esquire
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave NW
Washington, DC 20530

      RE:    **United States of America & Louise Hamburg v.**
                **The Dorchester Owners Association**
                **E.D. Pa. Civ. No. 20-1396**

Dear Mr. Basrawi:

    This office is in receipt of your letter dated October 28, 2020. First and foremost, the DOA is operating in good faith, not under a "delay and evade strategy," as you claim without foundation. As we have discussed in the past, the Dorchester Owners Association ("DOA") is a small organization, lacking both the staff and the sophistication of the Department of Justice. As such, when we last spoke, I requested your patience as DOA staff and I collected, reviewed and assembled documentation from the DOA. Please see the attached production submitted on behalf of the DOA. Be advised that a supplemental production of additional documents, including condominium rules and regulations and redacted minutes of meetings involving discussion of emotional support animals, will be made by November 13, 2020. Discovery is ongoing, and the DOA will supplement its response as necessary under the Rules of Civil Procedure, local rule and rule of court.

As to the general issues raised by your 12-page letter, I first note that you do not address the concept of proportionality in any meaningful way. As you know, this matter involves a single, infrequent resident of the Dorchester who has not been granted an accommodation to date, but who submitted documentation deemed by HUD to be "worthless" in support of her request and who has repeatedly refused to provide information necessary for the DOA to process that request. In addition, the United States has asserted a claim for relief on behalf of Bernard and Cynthia Halpern, despite the fact that they were already granted their requested accommodation. Accordingly, there is no rationale for the government to request over ten years of documentation from the DOA, from 2009 to present. Indeed, given that the earliest request from Ms. Hamburg came on Christmas Day of 2017, the government's proposed scope is wildly disproportionate to its cause of action. Your inability to appropriately contextualize this matter and/or unwillingness to use common sense to assess proportionality is concerning for a number of reasons.

Also for the record, I will also note that you have unilaterally posited the existence of a 2009 assistance animal policy in its Complaint – the existence of which the DOA denied for lack of information. I ask that you direct the DOA to whatever documentation you believe establishes the existence of a 2009 assistance animal policy.

I will also point out that, in response to several of the DOA's interrogatories and requests for production of documents directed to the Plaintiff, the United States refused to provide documentation in the possession of its subordinate agencies. Indeed, in lieu of providing that documentation, the United States took the position that it is only required to provide information and documentation already in the possession of the Department of Justice. I am aware of no authority for your client's position. As you noted in your correspondence, the discovery process dictates that parties should "show their hands." Your argument is bizarre, given the fact that your client is stonewalling the DOA on several other fronts. Discovery must be a two-way street.

Similarly, while you claim that the DOA's general objections were improper, your correspondence ignores the fact that Plaintiff itself provided dozens of general objections in its responses to the DOA's discovery requests. Many of those objections are identical to the ones articulated by the DOA. If the DOA can be accused of anything, it is only that it followed the Plaintiff's lead.

Although the United States claims that the DOA provided "vague answers" regarding various decision-makers, I will note that the DOA identified all members of its Council and, further, any employees in management positions who are responsible for assistance animal requests. Notwithstanding this point, the DOA already provided to HUD a list of its employees for the time period relevant to Plaintiff's claims, providing in detail the information sought by Plaintiff. Accordingly, the DOA has appropriately responded to Plaintiff's interrogatories.

Curiously, the United States has claimed that the DOA has failed to specifically identify documents responsive to its requests before the DOA has even produced any documents. Notwithstanding the illogical position of objecting to a document production that has not yet occurred, by way of this correspondence the DOA has provided all pertinent documents in its possession, in the form they were kept in the ordinary course of business. *See* Fed. R Civ. P. 34(b)(2)(E)(i). The DOA has not and will not withhold any documents that are relevant to Plaintiff's claim, including minutes, policies and correspondence, except where specifically objected to, and/or where attorney-client privilege is expressly asserted.

As to your interrogatories seeking information about "the DOA's knowledge of reasonable accommodation policies and denials," the DOA generally objects to these requests to the extent that they ask for the DOA to detail what each of its constituent members knew at any given time, despite the fact that the DOA is comprised of individuals and therefore cannot collectively have knowledge of anything. Both Plaintiff and Intervenor-Plaintiff will have opportunity to depose Council members and

DOA employees as to the extent of what they knew about emotional support animal requests at specific times.

As to your requests for confidential information about residents of the Dorchester, the DOA will not be producing that information absent consent from residents. The DOA has a duty to protect the privacy of each and every one of its residents. The DOA will produce documentation concerning Louise Hamburg, as she brought the instant litigation and it directly concerns her.

Lastly, and despite your arguments to the contrary, Plaintiff's request for financial information is premature. Despite your contentions to the contrary, the Court has not ruled that punitive damages are permissible in this case. In fact, by way of its September 30, 2020 order, the Court specifically deferred any such decision until the close of discovery. The information sought by Plaintiff is highly proprietary and confidential and, as such, will not be provided until such time that the Court determines that punitive damages are appropriate in this matter.

**KANE PUGH KNOELL TROY
& KRAMER, LLP**

/s/ Paul C. Troy
PAUL C. TROY, ESQUIRE
THOMAS J. ZIMMERMAN, ESQUIRE

cc: Margaret S. Coleman, Esq. (via email)